648 F.2d 1148
 Eugene L. HUNT, Appellant,
v.
Richard ROTH, Sheriff of Douglas County, Nebraska and Joseph
Vitek, Warden, Douglas County Corrections Center,
and Director, Douglas County Department
of Corrections, Appellees.
Eugene L. HUNT, Appellant,
v.
James M. MURPHY, District Judge of the Fourth Judicial
District of the State of Nebraska, Douglas County,
Nebraska, Appellee.
 Nos. 80-2067, 80-2068.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1981.
Decided May 13, 1981.
 
 Bennett G. Hornstein, Asst. Douglas County Public Defender, Omaha, Neb., for appellant.
 Paul L. Douglas, Atty. Gen., Terry R. Schaaf, Asst. Atty. Gen., Lincoln, Neb., for appellees.
 Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.
 LAY, Chief Judge:
 
 
 1
 Eugene L. Hunt was charged in Douglas County District Court, Omaha, Nebraska, with first degree sexual assault on a child and three counts of first degree forcible sexual assault. He was also charged with several counts of non-sexual felonies and one count of nonforcible sexual assault. Although Hunt was admitted to bail on the non-sexual offenses, the Omaha Municipal Court denied bail on the sexual offenses. On May 23, 1980, Hunt appeared in Douglas County District Court for a review of the denial of bail. The state district court refused to set bail on the rape charges, relying on Article I, Section 9 of the Nebraska Constitution:
 
 
 2
 All persons shall be bailable by sufficient sureties, except for treason, sexual offenses involving penetration by force or against the will of the victim, and murder, where the proof is evident or the presumption great.[1]
 
 
 3
 For the purposes of the state district court proceedings, Hunt stipulated that the proof was evident or the presumption great.
 
 
 4
 On June 2, 1980, Hunt filed a petition for habeas corpus in United States District Court. The district court allowed the state to intervene in the habeas action. On June 9, 1980 Hunt filed a complaint under 42 U.S.C. § 1983 seeking injunctive and declaratory relief. The cases were consolidated. On October 17, 1980, the district court denied the writ of habeas corpus and dismissed Hunt's complaint seeking declaratory and injunctive relief, on the rationale that Parker v. Roth, 202 Neb. 850, 278 N.W.2d 106, cert. denied, 444 U.S. 920, 100 S.Ct. 240, 62 L.Ed.2d 177 (1979), had correctly rejected federal constitutional challenges to Article I, section 9 of the Nebraska Constitution. Hunt appeals both judgments. In view of Hunt's subsequent convictions[2] we dismiss the appeal from the denial of the petition for writ of habeas corpus and his prayer for immediate release on bond as moot; we find, however, that the district court erred in dismissing Hunt's complaint for declaratory judgment and hold that Nebraska's classification of sexual offenses as nonbailable violates the "excessive bail" clause of the eighth amendment to the Constitution of the United States.
 
 
 5
 I. Preliminary Issues.
 
 
 6
 A. Existence of a "Case or Controversy."
 
 
 7
 Although the state has not challenged the jurisdiction of this court to entertain this appeal, we do so on our own motion.[3]
 
 
 8
 Since Hunt has been convicted, his effort to obtain pre-trial release on bail is arguably moot. Hunt's counsel urges that Hunt's appeal is not moot because it raises questions "capable of repetition, yet evading review." Under this doctrine, two elements must coincide: (1) the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam).
 
 
 9
 At first glance, it would seem that Hunt fails the second requirement, since there is no reason to believe he will again be arrested on rape charges and denied bail. Cf. id. (grant of parole). However, an alternative ground for the holding in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), suggests that the possibility of a new trial after direct appeal is sufficient to maintain a live controversy with respect to pretrial procedures. In Nebraska Press, the petitioners sought to overturn a state district court's pretrial order restraining publication of confessions or admissions by the defendant in a criminal trial. The court rejected the argument that the case became moot when the jury was impaneled and the order was lifted. There, as here, the defendant's direct appeal from his conviction was pending. This brought the case under the "capable of repetition, yet evading review" rule:
 
 
 10
 (I)f Simants' conviction is reversed by the Nebraska Supreme Court and a new trial ordered, the District Court may enter another restrictive order to prevent a resurgence of prejudicial publicity before Simants' retrial.
 
 
 11
 Id. at 546,[4] 96 S.Ct. at 2797.
 
 
 12
 If the Nebraska Supreme Court reverses Hunt's three convictions and orders new trials, Hunt will again be in the position where his liberty pending trial could be restrained by refusal to set bail. Under the circumstances we hold the section 1983 action is not now moot.[5] Cf. Powers v. Schwartz, 587 F.2d 783 (5th Cir. 1979) (petition for habeas corpus challenging Florida's refusal to allow bail for persons accused of crimes punishable by life imprisonment; case moot upon plaintiff's conviction).
 
 
 13
 Another concern with respect to the presence of a case or controversy relates to Hunt's concession of factual proof made in Douglas County District Court that the proof was evident and the presumption great. If the district court had found to the contrary, Hunt would have been eligible for release on bail.
 
 
 14
 Article III requires the existence of a "case or controversy" between two genuinely adverse parties. We are instructed not to reach the merits of a case when a party has failed to demonstrate sufficient standing, or where it is clear that there is no actual dispute because only one party or interest is before the court. In United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943), a landlord sought to invalidate the rent controls in the Emergency Price Control Act of 1942. To do so, he requested that his tenant bring an action under the Act seeking treble damages for excessive rent. The landlord controlled the suit and paid for the tenant's counsel. The Court ordered dismissal because of the collusive nature of the suit and the lack of genuinely adverse parties. See also Moore v. Charlotte-Mecklenburg Board of Education, 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971) (agreement between parties); Lord v. Veazie, 49 U.S. (8 How.) 250, 12 L.Ed. 1067 (1850) (cooperation between plaintiff and defendant to achieve same result). Unlike those cases, the parties in this case are clearly adverse. There is a bona fide dispute as to whether the state can constitutionally designate non-bailable offenses and thereby refuse to set bail for the petitioner.
 
 
 15
 It is also well settled that no stipulation of the parties or counsel can enlarge the power of the court by allowing it to decide hypothetical or fictitious cases. Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975). The fact that the parties reach an agreement by stipulation cannot in itself suffice to provide a binding conclusion that is the basis for judicial review. A court always retains the power to investigate issues or factual conclusions upon which the parties profess agreement. United States v. Sisson, 399 U.S. 267, 284-87, 90 S.Ct. 2117, 2126-2128, 26 L.Ed.2d 608 (1970); Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961); United States v. John J. Felin & Co., 334 U.S. 624, 639-40, 68 S.Ct. 1238, 1245-1246, 92 L.Ed. 1614 (1948); Estate of Sanford v. Commissioner, 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939); Swift & Co. v. Hocking Valley Railway Co., 243 U.S. 281, 289, 37 S.Ct. 287, 289, 61 L.Ed. 722 (1917); In re Weitzman, 426 F.2d 439, 454-55 (8th Cir. 1970) (Lay, J., concurring). Cf. United States v. International Union United Automobile, Aircraft & Agricultural Implement Workers, 352 U.S. 567, 592, 77 S.Ct. 529, 541, 1 L.Ed.2d 563 (1957). However, it is one thing to say that a court is not bound by a stipulation, and quite another to say that a case is "manufactured" simply because there have been stipulations below. The concern in cases like Swift and its progeny is avoidance of collusive disputes or attempts to assume facts simply to obtain review of hypothetical questions. Here, the petitioner and the state can hardly be said to be in collusion and are obviously adverse. Hunt has conceded that proof of the crime was evident and the presumption great. Thus, he has stipulated to the factual proof, obviating the need for the state to meet its burden of proof in that regard. Such a concession does not in itself amount to fabrication or collusive action. See Regents of the University of California v. Bakke, 438 U.S. 265, 280 n.14, 98 S.Ct. 2733, 2743 n.14, 57 L.Ed.2d 750 (1978); United Public Workers v. Mitchell, 330 U.S. 75, 93, 67 S.Ct. 556, 566, 91 L.Ed. 754 (1947). There is no contention by the state that Hunt is attempting to "disguise actual facts of record." Regents of the University of California v. Bakke, 438 U.S. at 280 n.14, 98 S.Ct. at 2743 n.14. While it is true the record does not disclose the underlying facts behind the stipulation, that does not mean the stipulation has no basis in fact. It would indeed be anomalous to say that Hunt or the state had to make a record of the facts before they could enter into a stipulation as to their existence. Finally, to urge that the parties may be denied appellate review by stipulating or conceding factual proof would result in longer trials and militate against sound judicial administration. Therefore, we conclude that Hunt's concession does not bar his constitutional challenge. Cf. Parker v. Roth, 202 Neb. 850, 278 N.W.2d 106, cert. denied, 444 U.S. 920, 100 S.Ct. 240, 62 L.Ed.2d 177 (1979).
 
 
 16
 B. Younger Abstention.
 
 
 17
 There is no reason for the exercise of abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[6] First, the State of Nebraska did not seek abstention in the federal district court and did not argue for it on appeal; in fact, the State expressed an interest in obtaining a federal decision. See Letter of March 3, 1981, Nebraska Department of Justice. Younger abstention is not jurisdictional in nature, but is an equitable doctrine based upon comity. "(I)f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system Younger principles of equity and comity do not require this Court to refuse (the State) the immediate (federal) adjudication it seeks." Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977) (footnote omitted).
 
 
 18
 Even if Nebraska asked for abstention, we do not deem it appropriate here. First, at the time of the district court hearing the on-going state proceeding was the criminal prosecution of Hunt. A declaratory judgment that the State cannot decree per se that certain offenses are non-bailable before trial does not interfere with the state's orderly criminal prosecution of Hunt. Second, federal abstention is premised upon the existence of an opportunity for the federal plaintiff to present his federal claim in the on-going state proceeding. E. g., Moore v. Sims, 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979); Juidice v. Vail, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). Hunt's claim that bail has been unconstitutionally denied is no defense to the criminal charge.[7] Furthermore, in Nebraska "(t)he appropriate form of relief from denial of a motion to reduce bail claimed to be excessive is by habeas corpus," State v. Harig, 192 Neb. 49, 62, 218 N.W.2d 884 (1974). Excessive bail claims will not be considered in an appeal to the Nebraska Supreme Court following conviction and sentencing. Id.; see also State v. Watkins, 190 Neb. 450, 452-3, 209 N.W.2d 184, 185-6 (1973). A state petition for habeas corpus would be futile here in light of the decision in Parker v. Roth, an identical dispute in all material respects. In sum, Hunt had no effective state court remedies when this suit was filed, he has none now, and can expect none in the future. Before he was convicted, his only remedy was a state habeas proceeding, which was futile. At the present time, he has no forum where he can make his claim. If his three convictions are reversed, he must revert back to his futile state habeas remedy. Under these circumstances, we find federal abstention is not warranted.
 
 
 19
 We conclude the court has jurisdiction to decide this appeal.
 
 
 20
 II. Constitutionality of Article I, Section 9.
 
 
 21
 We turn now to the merits of the appeal. The core issue is whether the amendment to Article I, Section 9 of the Nebraska Constitution denying bail to persons charged with "sexual offenses involving penetration by force or against the will of the victim, where the proof is evident or the presumption great" violates the United States Constitution.
 
 
 22
 A. Applicability of the Eighth Amendment to the State.
 
 
 23
 First and foremost we recognize the heavy burden a plaintiff must carry to demonstrate constitutional invalidity of a state constitutional provision. A state constitutional provision is the fundamental and organic law of the state and a federal court should be extremely hesitant to overturn it. Principles of federalism require that great deference be shown to a state constitutional provision. Similarly, we must also respect and give deference to a ruling of the Supreme Court of the State of Nebraska in which the court unanimously agreed there were no constitutional deficiencies in the provision. Parker v. Roth, 202 Neb. 850, 278 N.W.2d 106, cert. denied, 444 U.S. 920, 100 S.Ct. 240, 62 L.Ed.2d 177 (1979). Notwithstanding these principles the state recognizes, as it must, that it is still incumbent upon this court to analyze the state law to see if it conflicts with the federal constitution.[8] If a conflict exists, we have no alternative; it is our judicial responsibility to make the hard decision and declare the constitutional provision invalid. To do otherwise simply out of comity and respect for the people and courts of Nebraska would be to renounce our constitutional obligation.
 
 
 24
 The first unresolved question we face is whether the excessive bail clause of the eighth amendment controls the actions of the states. Although there is much implied recognition that the bail clause is incorporated in the liberties protected by the fourteenth amendment,[9] no federal court has provided analysis or an authoritative holding that it actually is. We do so now.
 
 
 25
 We are instructed that the fourteenth amendment protects a right against state action when the right is "fundamental to the American scheme of justice," Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968); "whether, that is, a procedure is necessary to an Anglo-American regime of ordered liberty." Id. at 150 n.14, 88 S.Ct. at 1448 n.14. Few could question that the excessive bail clause of the Constitution relates directly to our constitutional concept of ordered liberty.
 
 
 26
 "(B)ail is basic to our system of law," Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). As the Supreme Court observed in Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951):
 
 
 27
 This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act.
 
 
 28
 Id. at 4-6, 72 S.Ct. at 3-4.
 
 
 29
 The practice of admission to bail, as it has evolved in Anglo-American law, is not a device for keeping persons in jail upon mere accusation until it is found convenient to give them a trial. On the contrary, the spirit of the procedure is to enable them to stay out of jail until a trial has found them guilty Each defendant stands before the bar of justice as an individual Each accused is entitled to any benefits due to his good record, and misdeeds or a bad record should prejudice only those who are guilty of them.
 
 
 30
 Id. at 7-9, 72 S.Ct. at 5-6, (Jackson, J. concurring).
 
 
 31
 The protection against excessive bail has a direct nexus to the presumption of innocence, implicitly recognized within the fourteenth amendment. Cf. In re Winship, 397 U.S. 358, 362-64, 90 S.Ct. 1068, 1071-1073, 25 L.Ed.2d 368 (1970). In addition, excessive bail is directly related to the sixth amendment, as incorporated into the fourteenth amendment, relating to the effective assistance of counsel. Stack v. Boyle, 342 U.S. at 4, 72 S.Ct. at 3. Cf. Bitter v. United States, 389 U.S. 15, 17, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967). As succinctly stated by our sister circuit: "The right to be free from excessive bail underlies the entire structure of the constitutional rights enumerated in the Bill of Rights." United States v. Abrahams, 604 F.2d 386, 393 (5th Cir. 1979).[10]
 
 
 32
 We hold that the excessive bail clause of the eighth amendment is incorporated into the fourteenth amendment.[11]
 
 
 33
 B. Interpretation of "Excessive Bail" Clause.
 
 
 34
 We first turn to the constitutional text. The eighth amendment reads, in pertinent part: "Excessive bail shall not be required " The language of the clause has its origin in the English Bill of Rights of 1689, 1 W. & M., Sess. 2, c. II, § I(10).[12] See Carlson v. Landon, 342 U.S. 524, 545, 72 S.Ct. 525, 536, 96 L.Ed. 547 (1952).
 
 
 35
 The state argues that since the express terms of the eighth amendment do not create a "right to bail," but merely forbid "excessive bail," the state may refuse to grant bail without violating the eighth amendment. We recognize that there is logical support and some authority for this argument.[13] Nonetheless, the history of the right to bail, judicial precedent, the fundamental purpose of bail and the language of the clause itself require us to make further inquiry.
 
 
 36
 We first consider the logic of interpreting the clause to mean that bail may not be "excessive," but may be denied altogether. We find ourselves in agreement with the Second Circuit's cogent observation: "we perceive no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons." United States ex rel. Goodman v. Kehl, 456 F.2d 863, 868 (2d Cir. 1972) (emphasis added). Similarly, Mr. Justice Burton, writing in dissent in Carlson v. Landon, observed:
 
 
 37
 (The) Amendment clearly prohibits federal bail that is excessive in amount when seen in the light of all traditionally relevant circumstances. Likewise, it must prohibit unreasonable denial of bail. The Amendment cannot well mean that, on the one hand, it prohibits the requirement of bail so excessive in amount as to be unattainable, yet, on the other hand, under like circumstances, it does not prohibit the denial of bail, which comes to the same thing. The same circumstances are relevant to both procedures.
 
 
 38
 342 U.S. at 569, 72 S.Ct. at 548 (emphasis added).[14]
 
 
 39
 If the eighth amendment has any meaning beyond sheer rhetoric, the constitutional prohibition against excessive bail necessarily implies that unreasonable denial of bail is likewise prohibited. Logic defies any other resolution of the question.
 
 
 40
 This does not necessarily mean that a court cannot refuse to set bail in some cases. Pretrial release is a recognition of the individual's interest in obtaining freedom prior to any finding of guilt. Society also has certain interests that are balanced against the individual's desire for release. Foremost among these interests is society's desire to obtain assurances that the accused will appear for trial and submit to sentencing. As the Court wrote in Stack v. Boyle, 342 U.S. at 4-5, 72 S.Ct. at 3-4:The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Ex parte Milburn, 9 Pet. 704, 710, (9 L.Ed. 280) (1835). Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment. See United States v. Motlow, 10 F.2d 657 (1926, opinion by Mr. Justice Butler as Circuit Justice of the Seventh Circuit).
 
 
 41
 Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant.[15]
 
 
 42
 We ordinarily determine whether bail in a particular case is "excessive" by considering whether the amount corresponds to the state's interests under the particular circumstances of the case. If the bail is higher than is necessary to meet the state's legitimate objectives, it is excessive. We recognize that there may be instances where no amount of bail can sufficiently protect the state's interests. In such a case, a court may consider the relevant factors and deny bail. See, e. g., United States v. Abrahams, 575 F.2d 3 (1st Cir.), app'l for bail denied, 436 U.S. 902, 98 S.Ct. 2229, 56 L.Ed.2d 399, cert. denied, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978) (denying bail where accused had forfeited a $100,000 bond in the past and "lived a life of subterfuge, deceit and cunning."). However, it is quite another thing to say that the eighth amendment would permit outright denial of bail without consideration of the factors relevant to an individual's suitability for pretrial release; at least in the eyes of the accused, an unreasonable and arbitrary denial of bail is surely the equivalent to an unobtainably high amount of bail that is set unreasonably and arbitrarily.
 
 
 43
 The State argues, however, that nothing within the eighth amendment prohibits a legislative (as opposed to a judicial) denial of bail in a certain class of cases. The Supreme Court of Nebraska accepted this argument:
 
 
 44
 Once a recognition that legislative bodies had the right to exclude murder, treason, or capital offenses from bail is made, one is left with the inescapable conclusion that the Eighth Amendment simply prohibited excessive bail where allowed and did not guarantee the right to bail in every instance.
 
 
 45
 Parker v. Roth, 278 N.W.2d at 111.
 
 
 46
 In considering this view, we observe first that it suffers from the same logical flaw as the argument just discussed. If legislative bodies are free to define any and all offenses as nonbailable, they may deprive the amendment of any force and accused persons of any protection. We agree with Justice Black that to conclude that "the Amendment does no more than protect a right to bail which Congress can take away reduce(s) (it) below the level of a pious admonition." Carlson v. Landon, 342 U.S. at 556, 72 S.Ct. at 542 (dissenting opinion). This indeed is a "devitalizing interpretation." Id.
 
 
 47
 The state urges that English history supports the concept of legislative denial of bail, since Parliament recognized certain offenses were nonbailable and others were subject to reasonable bail. See Duker and Meyer, supra note 12.
 
 
 48
 In construing the Constitution, an analysis of English common law and its adaptation in the colonies can be relevant in determining the intent of the framers.[16] However, the overall history of the bail clause does not necessarily support the conclusion advanced by the state. The fact that Parliament classified certain offenses as nonbailable is not an absolute indication that Congress was to enjoy the same power to define bailable and nonbailable offenses. Our Congress operates under the limits imposed by the Constitution. England, of course, had no constitution.[17] The Constitution was our assurance that many of the abuses suffered under English rule would not be passed on to our people. As the Supreme Court recognized 30 years ago, quoting Stansbury's trial of James H. Peck:
 
 
 49
 At the Revolution we separated ourselves from the mother country, and we have established a republican form of government, securing to the citizens of this country other and greater personal rights, than those enjoyed under the British monarchy.
 
 
 50
 Bridges v. California, 314 U.S. 252, 264 n.7, 62 S.Ct. 190, 194, 86 L.Ed. 192 (1941).
 
 
 51
 See also Carlson v. Landon, 342 U.S. at 557, 72 S.Ct. at 542 (Black, J., dissenting).
 
 
 52
 Furthermore, there is strong evidence in colonial laws that the American concept of bail differed significantly from English law. Most significant is the early recognition within the colonies that bail was deemed a right of every person except those charged with capital crimes. As early as 1641, the Massachusetts Body of Liberties guaranteed bail in noncapital crimes.[18] This trend in colonial law toward a guarantee of bail in noncapital cases culminated in the Northwest Ordinance of 1787, which stated:
 
 
 53
 (A)ll persons shall be bailable, unless for capital offences, where the proof shall be evident, or the presumption great. All fines shall be moderate, and no cruel or unusual punishments shall be inflicted.
 
 
 54
 An Ordinance for the Government of the Territory of the United States North-west of the River Ohio, Art. II, 22 Journals of the Continental Congress 334 (1787), reprinted in 1 Stat. 50 n. (a).
 
 
 55
 Similar clauses now appear in most state constitutions. See Petition of Humphrey, 601 P.2d 103, 108-11 (Okl.Cr.1979) (compiling state constitutional provisions).[19]
 
 
 56
 The state, however, places strong reliance on Mr. Justice Reed's observations in Carlson v. Landon, 342 U.S. at 545-46, 72 S.Ct. at 537.
 
 
 57
 The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable.
 
 
 58
 The state emphasizes that throughout Anglo-American legal history there have been legislative acts denying bail in capital cases. In fact, when the eighth amendment itself was adopted, Congress contemporaneously passed section 33 of the Judiciary Act of 1789, 1 Stat. 73, guaranteeing bail to every accused person except those charged with capital crimes. Thus, it is argued that the framers of the Bill of Rights were well aware that the right to bail could be legislatively denied.
 
 
 59
 Although we are not confronted with the question, we acknowledge that Congress, and the state legislatures, seemingly possess the power to deny the right to bail to persons charged with capital crimes. It is argued that from this premise we must conclude that a legislative body may also deny the right to bail in any or all noncapital cases. However, the syllogism is not complete. First, as discussed, there is a historical basis for the capital crimes exception; there is no similar historical basis for a legislative denial in noncapital cases. In fact, colonial practice suggests to the contrary. Second, the concept of denial of bail in capital cases is at least arguably consistent with one of the purposes of bail. As previously set forth, traditionally the fundamental and sole purpose of bail before conviction was to provide reasonable assurance the accused would appear for trial and sentencing if convicted. The Ninth Circuit recently observed that state courts have found that statutes denying bail to defendants charged with capital offenses were "enacted because it had been thought that most defendants facing a possible death penalty would likely flee regardless of what bail was set, but that those facing only a possible prison sentence would not if bail were sufficiently high." United States v. Kennedy, 618 F.2d 557, 559 (9th Cir. 1980).
 
 
 60
 Blackstone's Commentaries observed in 1770:
 
 
 61
 (the accused) must either be committed to prison, or give bail; that is, put in securities for his appearance, to answer the charge against him. This commitment therefore being only for safe custody, wherever bail will answer the same intention, it ought to be taken; as in most of the inferior crimes: but in felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person. For what is there that a man may not be induced to forfeit, to save his own life? and what satisfaction or indemnity is it to the public, to seize the effects of them who have bailed a murderer, if the murderer himself be suffered to escape with impunity?
 
 
 62
 4 W. Blackstone, Commentaries on the Laws of England 293-94 (4th Ed. 1770).
 
 
 63
 In dealing with noncapital offenses there exists no similar rational and relevant concern. In noncapital crimes without balancing at least the individual factors of the particular case there exists no equally strong compulsion to conclude that an accused will not appear for trial.
 
 
 64
 Certainly the eighth amendment would prohibit Congress from arbitrarily decreeing that all persons arrested for possession of an illegal weapon or a proscribed drug must give security by a $1,000,000 bond. We think few courts would have difficulty finding that such a law would not pass muster under the excessive bail clause. If a $1,000,000 bond set arbitrarily by legislative fiat is excessive there is little logic to support the proposition that Congress could arbitrarily deny bail for any or all criminal charges whatsoever. The point is, we agree, Congress and the states may reasonably legislate as to the right to bail for certain offenses "provided the power is exercised rationally, reasonably, and without discrimination."[20]
 
 
 65
 Lastly, we turn to judicial precedent.
 
 
 66
 It is urged that Carlson v. Landon, relied upon by the Nebraska Supreme Court, has settled the issue favorably to the state. We disagree; Carlson, in our judgment, provides at least implicit support for striking down the Nebraska amendment.[21]
 
 
 67
 Carlson involved the discretionary denial of bail by the Attorney General for alien communists facing deportation. On its face, Carlson may not be controlling here since it did not involve persons accused of crime, the traditional concern of the bail clause. Nevertheless, we deem it significant that the Supreme Court upheld the denial of bail under the Internal Security Act, solely on the grounds that Congress had provided the Attorney General with discretion to grant or deny bail. Significantly, with respect to aliens facing deportation proceedings, his discretion was subject to judicial review. The Supreme Court observed:
 
 
 68
 A wide range of discretion in the Attorney General as to bail is required to meet the varying situations arising from the many aliens in this country.
 
 
 69
 The policy and standards as to what aliens are subject to deportation are, in general, clear and definite. 8 U.S.C. §§ 137 and 155. Specifically when dealing with alien Communists, as in these cases, the legislative standard for deportation is definite. See notes 3 and 4, supra. In carrying out that policy the Attorney General is not left with untrammeled discretion as to bail. Courts review his determination. Hearings are had, and he must justify his refusal of bail by reference to the legislative scheme to eradicate the evils of Communist activity.
 
 
 70
 342 U.S. at 543, 72 S.Ct. at 536 (emphasis added).
 
 
 71
 In Carlson the court of appeals in fact earlier had remanded to the district court one of the individual cases since the government had not based the Attorney General's denial on relevant factors relating to the necessity of pretrial detention.[22] Significantly, the Supreme Court stated:
 
 
 72
 In fact, a report filed with this Court by the
 
 
 73
 Department of Justice in this case at our request shows allowance of bail in the large majority of cases. The refusal of bail in these cases is not arbitrary or capricious or an abuse of power.
 
 
 74
 Id. at 542, 72 S.Ct. at 535 (emphasis added).
 
 
 75
 Thus Carlson recognized that where the Attorney General exercised judgmental discretion, denial of bail could not be based on arbitrary standards. In concluding the eighth amendment did not prevent denial of bail, the Court carefully stated:
 
 
 76
 We think, clearly, here that the Eighth Amendment does not require that bail be allowed under the circumstances of these cases.
 
 
 77
 Id. at 546, 72 S.Ct. at 537 (emphasis added).
 
 
 78
 C. The Nebraska Procedures.
 
 
 79
 We turn now to the question of whether the Nebraska constitutional amendment constitutes an unreasonable and arbitrary denial of bail violating the excessive bail clause of the eighth amendment. We conclude that it does.
 
 
 80
 Under the challenged state procedures, bail must be denied to every person charged with "sexual offenses involving penetration by force or against the will of the victim" where the "proof is evident or the presumption great." Once the charge is made and it is determined that the proof is evident, no other relevant factor is weighed and no standards relevant to the purpose of assuring the presence of the defendant are considered. No discretion is vested in any judicial officer to grant or to deny bail. The only circumstance where bail might possibly be granted is where the judicial officer determines the proof is not evident or the presumption is not great.[23] This criterion, however, bears little relevance to the factors ordinarily used to determine whether bail should be granted or denied in an individual case. As earlier indicated, the right to release before trial is traditionally based upon reasonable conditions to provide "adequate assurance" that the accused will stand trial and submit to sentence if found guilty. Release upon reasonable conditions of bail thus serves to preserve the presumption of innocence by preventing infliction of punishment before trial. Stack v. Boyle, 342 U.S. at 4-5, 72 S.Ct. at 3-4; Hudson v. Parker, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895). The state does not contend that an absolute denial of bail to all persons charged with forcible rape is rationally related or necessary to assuring their appearance at trial. In noncapital cases there exists no empirical basis for an assumption that all persons charged will not appear for trial once appearance is conditioned upon reasonable bail.
 
 
 81
 The state urges, however, that it may permissibly view the crime of first degree sexual assault as a heinous crime distinct from other crimes and that "the welfare of society demands that persons charged with this crime should not be afforded pretrial release." Cf. Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). There is little need to demonstrate at length the seriousness of the crime of rape. No one can deny society's continuing concern for preventing the occurrence of such offenses and exercising every legitimate effort to punish those who commit the crime. But punishment for any crime before trial and proper conviction is alien to our legal system and constitutes a denial of due process. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[24] Thus, it is plain that accused persons cannot be held with the intention of punishing them, and the state does not claim it has such a purpose. The only other purpose conceivably served is protecting society from these persons. This argument rests on the assumption that all persons accused of first degree sexual offenses in Nebraska, where there is a preliminary finding of evident proof of the offense, pose a danger to the community by inclination to commit similar offenses.
 
 
 82
 There has long been legal debate as to whether bail may be denied where the judicial officer finds that the individual poses a danger to the community.[25] Preventive detention is officially recognized in the federal system only in the District of Columbia. D.C.Code Ann. §§ 23-1321 to 23-1322. See Blunt v. United States, 322 A.2d 579 (D.C.App.1974). However, even under this legislation, an individual is afforded procedural safeguards and the government must prove that the individual's behavior presents a risk to the community.
 
 
 83
 The federal courts have traditionally held, consistent with Stack v. Boyle, that under the eighth amendment and the federal bail statute, the only relevant factor is the likelihood that the defendant will appear for trial. See note 15, supra.[26] Several courts have, however, indicated that danger to the community may be considered when setting bail. See Carlson v. Landon, 342 U.S. at 538, 72 S.Ct. at 533; Carbo v. United States, 82 S.Ct. 662, 666, 7 L.Ed.2d 769 (1962) (Douglas, Circuit J.); United States v. Wind, 527 F.2d 672 (6th Cir. 1975); United States ex rel. Covington v. Coparo, 297 F.Supp. 203, 207 (S.D.N.Y.1969); Wansley v. Wilkerson, 263 F.Supp. 54, 57 (W.D.Va.1967). But see United States v. Beaman, 631 F.2d 85, 87 (6th Cir. 1980); United States v. Bigelow, 544 F.2d 904 (6th Cir. 1976) (Wind restricted to threats to witnesses); United States v. Leathers, 412 F.2d 169, 171 (D.C.Cir.1969). There are also several cases suggesting that the court may deny bail in order to protect its own processes, such as in cases where an accused has threatened witnesses. Carbo v. United States, 82 S.Ct. at 668-69; United States v. Smith, 444 F.2d 61, 62 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). United States v. Bigelow, 544 F.2d at 907-08; Gavino v. MacMahon, 499 F.2d 1191, 1195 (2d Cir. 1974); Nail v. Slayton, 353 F.Supp. 1013, 1019-20 (W.D.Va.1972). Cf. Martin v. State, 517 P.2d 1389 (Alaska 1974); In re Underwood, 9 Cal.3d 345, 107 Cal.Rptr. 401, 508 P.2d 721 (1973); Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972) (courts holding that state constitutions guarantee bail and prevent pretrial detention based on dangerousness).
 
 
 84
 On the record before us, however, we need not decide whether discretionary pretrial release of an individual may be denied after a finding that release would create a danger to the community. It is sufficient to observe that the Nebraska procedures provide for no inquiry into the dangerousness of the individual, and no such finding appears in the record of this case. Instead, Nebraska has made a legislative determination that an entire class of accused persons is not entitled to bail. We are aware of no decision, with the exception of Parker v. Roth, including Carlson, that has sanctioned legislative denial of bail to all persons based solely on the noncapital offense charged. Instead, every determination involving bail in noncapital cases involves the balancing of particularized factors of the individual case. The factors to be weighed by a judicial officer include the nature and circumstances of the offense charged, the accused's family ties, employment, financial resources, character and mental condition, the length of the residence in the community, the record of prison convictions and the record of appearance at court proceedings or flight to avoid prosecution. See, e.g., 18 U.S.C. § 3146(b); 2A Neb.Rev.Stat. § 29-901.01. And assuming, arguendo, that the danger to the community is also a relevant factor, the individual factors just recited must be weighed along with the overall background and known propensities of the individual before it can be reasonably determined that such individual poses such a threat to the community that bail must be denied. A judicial officer who is legislatively denied discretion to consider these factors is required arbitrarily to deny every defendant the right to bail based solely on the particular crime charged.
 
 
 85
 We do not hold and need not decide that there is a constitutional right in every case to release on bail. As we have discussed, there exists a strong argument that bail may be properly denied without encroaching on constitutional concerns where a judicial officer weighs all the appropriate factors and makes a reasoned judgment that the defendant's past record demonstrates that bail will not reasonably assure his or her appearance or, arguendo, that he or she, because of the overall record and circumstances, poses a threat to the community. The fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release.[27] The constitutional protections involved in the grant of pretrial release by bail are too fundamental to foreclose by arbitrary state decree. The state may be free to consider the nature of the charge and the degree of proof in granting or denying bail but it cannot give these factors conclusive force. Cf. L. Tribe, American Constitutional Law 1095-96 (1978).[28] As Mr. Justice Murphy once wrote in another context: "(T)o justify discriminatory action against the entire group is to deny that under our system of law individual guilt is the sole basis for the deprivation of rights." Korematsu v. United States, 323 U.S. 214, 240, 65 S.Ct. 193, 205, 89 L.Ed. 194 (1944) (dissent).
 
 
 86
 We hold, therefore, that the portion of Article I, section 9 of the Nebraska Constitution denying bail to persons charged with certain sexual offenses violates the eighth amendment of the United States Constitution, as incorporated in the fourteenth amendment. Accordingly, we reverse the district court's dismissal of the complaint and remand for issuance of a declaratory judgment in accordance with this opinion. The plaintiff has also prayed for an injunction restraining future application of this portion of the Nebraska Constitution. We see no need for the issuance of an injunction. See Roe v. Wade, 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973). The appeal from the denial of the writ of habeas corpus is dismissed as moot.
 
 
 87
 ARNOLD, Circuit Judge, dissenting.
 
 
 88
 Because I believe that this case has been moot since Hunt was convicted of first-degree forcible sexual assault on September 10, 1980, and that we should not permit the parties, by means of a stipulation without basis in the record, to force us to decide an important question of federal constitutional law, I respectfully dissent from Part I-A of the Court's opinion. It is unnecessary for me to express a view on the other issues discussed by the Court.
 
 
 89
 First. A decision that Article I, § 9, of the Constitution of Nebraska violates the Excessive Bail Clause of the Eighth Amendment to the Constitution of the United States is of absolutely no use to Eugene L. Hunt. Pretrial bail no longer means anything to Hunt. He has been convicted on two charges of first-degree forcible sexual assault and one charge of first-degree sexual assault on a child. He is in jail because of these three convictions and will remain there despite this Court's acceptance of his claim under the Eighth Amendment. Only if all three of Hunt's convictions are reversed, will such a holding have any significance for Hunt as an individual. What the likelihood of such a triple reversal might be, we have no way of knowing, since this record contains no hint of the facts relevant to Hunt's guilt or innocence.[1] The possibility of three reversals is wholly speculative. They could come about, but one may be pardoned, I hope, for doubting it.
 
 
 90
 I do not read Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2796-2797, 49 L.Ed.2d 683 (1976), as holding that the possibility that Hunt's convictions might be reversed prevents this case from being moot. It is true that one reason given by the Supreme Court for not dismissing the case as moot was that Simants's conviction might be reversed by the Supreme Court of Nebraska, and a new trial ordered. But I think the case does not hold that this circumstance alone prevents mootness. In other words, the possibility that the conviction might be reversed is not, in my view, a true alternative holding, a ground upon which the Court would have reached the result even if the other reason for rejecting the suggestion of mootness had not been present. The case involved not merely the rights of Simants, but the rights of all news media covering criminal trials in the State of Nebraska. The likelihood that the controversy would be repeated in some state trial court, to the detriment of the Nebraska Press Association, the party actually before the Court, whether or not Simants's conviction was affirmed, was thus overwhelming.
 
 
 91
 The Supreme Court's citation of Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), in Nebraska Press Ass'n, supra, 427 U.S. at 547, 96 S.Ct. at 2797, reinforces this conclusion. In Weinstein petitioner sued the members of the North Carolina Board of Parole, claiming that they were obligated under the Due Process Clause of the Fourteenth Amendment to accord him certain procedural rights in considering his eligibility for parole. After the case had been decided in the Court of Appeals, plaintiff was paroled and completely released from supervision. The Supreme Court held that the case was moot. It distinguished Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), the first case to enunciate the "capable of repetition, yet evading review" branch of the law of mootness, on the ground that in Southern Pacific "the same party would in all probability be subject to the same kind of order in the future " 423 U.S. at 149, 96 S.Ct. at 348. "(T)here is no demonstrated probability that (plaintiff) will again be among" the class of persons subject to the challenged parole procedures. Ibid. Application of the "capable of repetition, yet evading review" doctrine was limited to cases in which "there was a reasonable expectation that the same complaining party would be subjected to the same action again." Ibid.
 
 
 92
 Nebraska Press Ass'n cites Weinstein without any kind of qualification, and without any explicit acknowledgment that a new or different rule of mootness is being announced. A rule that the mere possibility of reversal of a conviction prevents the case from becoming moot would certainly be a different rule from that stated in Weinstein. I therefore conclude that the Nebraska Press Ass'n opinion should be interpreted as resting upon the concurrence of two circumstances: the possibility of reversal of the conviction, and the likelihood that members of the Press Association would again, in some trial court, be subjected to the challenged restrictions on their activities.
 
 
 93
 Second. As to the stipulation that, in Hunt's case, the proof was evident and the presumption great, it is hard not to view it as an effort by the parties to manipulate the federal courts into deciding a constitutional question. The cases are legion admonishing the federal courts not to reach constitutional questions unnecessarily, and I would apply this maxim here. The concurring opinion in In re Weitzman, 426 F.2d 439, 455 (8th Cir. 1970) (Lay, J.), is a strong statement of this concern. That case involved not a stipulation, but simply the failure of Mrs. Weitzman to pursue on appeal an argument she had unsuccessfully raised in the trial court. Here, just as in Weitzman, the parties tender a constitutional question for decision, when the resolution of an antecedent question of fact, which they have attempted to leave out of the case, could make constitutional adjudication unnecessary. I agree that the parties in this case are genuinely adverse on the merits. I do not agree that they can compel us to reach a constitutional question. If there were facts in this record from which we could conclude whether indeed the proof was evident, or the presumption great, I would go ahead and reach that question, as Judge Lay did in his concurring opinion in Weitzman, and as the Supreme Court did in Swift & Co. v. Hocking Valley Ry., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917). This record, however, so far as I know, is devoid of proof on the question, so the proper remedy should be to dismiss the complaint for want of justiciability.
 
 
 94
 A situation similar in some respects was presented in Naim v. Naim, 350 U.S. 891, 76 S.Ct. 151, 100 L.Ed. 784 (1955) (per curiam), where the Supreme Court declined to rule on a federal constitutional question in part because of "the failure of the parties to bring here all questions relevant to the disposition of the case " Ibid.
 
 
 95
 Both sides urge us to overcome these doubts and reach the merits. But jurisdiction cannot be conferred by consent, least of all in constitutional matters. The federal courts have an institutional interest of their own in scrupulously confining their power to strike down legislation to those cases where exercise of the power is safely within the traditional judicial function to decide cases affecting substantial rights of real people. If this were such a case, I should be as quick as any to meet the issue. But here the likelihood that our holding will mean anything to the named party challenging the state constitutional provision is so attenuated, and the question presented so abstract, that I would refrain from adjudicating the merits, not out of timidity, but out of discretion.
 
 
 
 [1]
 The Nebraska Constitution was amended in 1978. Prior to that time only treason and murder were nonbailable offenses where the proof was evident or the presumption great
 
 
 [2]
 Hunt was convicted of first degree sexual assault on a child on October 8, 1980; on December 11, 1980, he was sentenced to 12-15 years in prison. An appeal to the Nebraska Supreme Court is pending. One first degree forcible sexual assault charge was dismissed on December 16, 1980. Hunt was found guilty of the remaining two first degree forcible sexual assault charges on September 10, 1980, and November 5, 1980. On November 13, 1980, he received consecutive terms of 8-15 years in prison. Hunt filed direct appeals from both these convictions
 
 
 [3]
 After oral argument the parties were requested to submit supplemental briefs on the issues of mootness and abstention
 
 
 [4]
 In fact, the Nebraska Supreme Court vacated Simants' conviction and ordered a new trial. Simants v. State, 202 Neb. 828, 277 N.W.2d 217 (1979)
 
 
 [5]
 Hunt's counsel estimates that review in the Nebraska Supreme Court will not be completed until late 1981 or early 1982. If even one of his three convictions is affirmed, we recognize the case could become moot at that time, since pretrial release on bail would no longer be possible
 Possible alternatives for obtaining review of the constitutionality of this statute would be to claim damages for the refusal to set bail, or to file a class action, see Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); Gerstein v. Pugh, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975); United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Hunt did not pray for damages, nor did he seek to have a class certified.
 
 
 [6]
 Hunt's failure to exhaust state remedies does not affect his section 1983 action. Exhaustion of state remedies is not a prerequisite to maintaining a section 1983 action. Steffel v. Thompson, 415 U.S. 452, 472-73, 94 S.Ct. 1209, 1222-1223, 39 L.Ed.2d 505 (1974); McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961)
 
 
 [7]
 This point was raised in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), where pretrial detainees sought federal relief from Florida procedures that denied them a pretrial hearing. The court agreed that Younger did not apply because the injunction "was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." Id. at 108 n.9, 95 S.Ct. at 860 n.9. Cf. O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (challenge to allegedly racist bail procedures; in dicta, says abstention appropriate to avoid "on-going federal audit of state criminal proceedings"); Bonner v. Circuit Court, 526 F.2d 1331 (8th Cir. 1975) (en banc), cert. denied, 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976). Compare Conover v. Montemuro, 477 F.2d 1073 (3d Cir. 1973) (no Younger abstention) with Parker v. Turner, 626 F.2d 1 (6th Cir. 1980) and Wallace v. Kern, 520 F.2d 400 (2d Cir. 1975), cert. denied, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976) (cases applying O'Shea )
 
 
 [8]
 Article VI of the Constitution of the United States reads:
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
 
 
 [9]
 In Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971), the Court stated that "(b)ail is basic to our system of law and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment." See also Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694 n.3, 61 L.Ed.2d 433 (1979). The Court cited Pilkinton v. Circuit Court, 324 F.2d 45, 46 (8th Cir. 1963), where this circuit stated: "We take it for granted that the prohibition in the Eighth Amendment against requiring excessive bail must now be regarded as applying to the States " See also United States ex rel. Walker v. Twomey, 484 F.2d 874, 875 (7th Cir. 1973); United States ex rel. Goodman v. Kehl, 456 F.2d 863, 868 (2d Cir. 1972); Simon v. Woodson, 454 F.2d 161, 165 (5th Cir. 1972)
 
 
 [10]
 An interesting summary is provided in Justice Story's Commentaries on the Constitution:
 The next amendment is, "Excessive bail shall not be "required; nor excessive fines imposed; nor cruel and unusual punishments inflicted." This is an exact transcript of a clause in the bill of rights, framed at the revolution of 1688. The provision would seem to be wholly unnecessary in a free government, since it is scarcely possible, that any department of such a government should authorize or justify such atrocious conduct. It was, however, adopted as an admonition to all departments of the national government, to warn them against such violent proceedings, as had taken place in England in the arbitrary reigns of some of the Stuarts. In those times, a demand of excessive bail was often made against persons, who were odious to the court and its favorites; and on failing to procure it, they were committed to prison. Enormous fines and amercements were also sometimes imposed, and cruel and vindictive punishments inflicted. Upon this subject Mr. Justice Blackstone has wisely remarked, that sanguinary laws are a bad symptom of the distemper of any state, or at least of its weak constitution. The laws of the Roman kings, and the twelve tables of the Decemviri, were full of cruel punishments; the Porcian law, which exempted all citizens from sentence of death, silently abrogated them all. In this period the republic flourished. Under the emperors severe laws were revived, and then the empire fell.
 
 
 [2]
 J. Story, Commentaries on the Constitution of the United States, 610-611 (2d ed. 1851)
 
 
 [11]
 We note that the Supreme Court has held the cruel and unusual punishment clause of the eighth amendment applicable to the states. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)
 
 
 [12]
 Ancient English laws defined nonbailable offenses; bail was denied to persons arrested for the death of a man, for offenses in the forest and other offenses customarily nonbailable, and by special command of the Crown. Others were denied bail by discretion of the sheriff. In 1275, the Statute of Westminster the First restricted the sheriff's discretion by means of a statutory listing of bailable and nonbailable offenses
 Nonbailable were: (1) such prisoners as before were outlawed; (2) those who have abjured the realm; (3) approvers; (4) such as be taken with the manour (cum manuopere ); (5) those who had broken the King's prison; (6) thieves openly defamed and known; and (7) such as be appealed (accused) by approvers, so long as the approvers be living, if they be not of good fame; (8) such as be taken for houseburning feloniously done; (9) for false money; or (10) for counterfeiting the King's seal; or (11) persons excommunicated, taken at the request of the Bishop; or (12) for manifest offenses; or (13) for treason touching the King himself.
 Bailable were: (1) such as be indicted of larceny by official inquests taken by sheriffs or bailiffs; or (2) of light suspicion; or (3) for petit larceny that amounteth not above the value of 12 pence, if they were not accused (rette ) of other larceny aforetime; or (4) accused (rette ) of receipt of felons; or of commandment, or force, or of aid of felony done; or (5) accused (rette ) of other trespass, for which a man shall not lose life nor limb; and (6) a man appealed (accused) by an approver after the death of the approver, if he be no openly defamed thief. 3 Edw. 1, c. 15 (1275).
 Meyer, Constitutionality of Pretrial Detention, Part I, 60 Geo.L.J. 1140, 1154 n.93 (1972).
 Difficulties in securing release on bail led to the Petition of Right of 1628, but there was no effective mechanism to force timely setting of bail and release. This prompted passage of the Habeas Corpus Act of 1679, which could be used to force the setting of bail. It did not, however, prevent the setting of bail at unreasonably high levels. To close this loophole, the Bill of Rights of 1689 declared "that excessive bail ought not to be required." See generally Meyer, supra at 1151-57, 1180-90; Duker, The Right to Bail: A Historical Inquiry, 42 Albany L.Rev. 33, 34-66 (1977).
 
 
 [13]
 See generally Duker, supra n.12; Meyer, supra n.12
 
 
 [14]
 Mr. Justice Butler, acting as circuit justice, in allowing bail in United States v. Motlow, 10 F.2d 657 (7th Cir. 1926), an appeal following a conviction under the National Prohibition Act, stated:
 The Eighth Amendment provides that "excessive bail shall not be required." This implies, and therefore safeguards, the right to give bail at least before trial. The purpose is to prevent the practical denial of bail by fixing the amount so unreasonably high that it cannot be given. The provision forbidding excessive bail would be futile if magistrates were left free to deny bail.
 Id. at 659.
 
 
 [15]
 See also United States v. Smith, 444 F.2d 61, 62 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972) ("The primary purpose of bail is to allow an accused person not yet tried to be free of restraint while at the same time insuring that person's presence at the pending court proceedings."); White v. United States, 330 F.2d 811, 814 (8th Cir.), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964); Forest v. United States, 203 F.2d 83, 84 (8th Cir. 1953); United States v. Beaman, 631 F.2d 85, 86 (6th Cir. 1980); Pugh v. Rainwater, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc); United States v. Wright, 483 F.2d 1068, 1069 (4th Cir. 1973); United States v. Bobrow, 468 F.2d 124, 127 n.16 (D.C.Cir.1972)
 
 
 [16]
 See, e. g., United States v. DiFrancesco, -- U.S. --, 101 S.Ct. 426, 435-36, 66 L.Ed.2d 328 (1980); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 2821-26, 65 L.Ed.2d 973 (1980); Payton v. New York, 445 U.S. 573, 591-98, 100 S.Ct. 1371, 1382-1386, 63 L.Ed.2d 639 (1980); Gannett Co. v. DePasquale, 443 U.S. 368, 384-91, 99 S.Ct. 2898, 2907-2911, 61 L.Ed.2d 608 (1979); Nevada v. Hall, 440 U.S. 410, 414-20, 99 S.Ct. 1182, 1185-1188, 59 L.Ed.2d 416 (1979); Williams v. Florida, 399 U.S. 78, 90-100, 90 S.Ct. 1893, 1900-1906, 26 L.Ed.2d 446 (1970)
 
 
 [17]
 Compare United States v. Brewster, 408 U.S. 501, 508, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972):
 Although the Speech or Debate Clause's historic roots are in English history, it must be interpreted in light of the American experience, and in the context of the American constitutional scheme of government rather than the English parliamentary system. We should bear in mind that the English system differs from ours in that their Parliament is the supreme authority, not a coordinate branch.
 
 
 [18]
 A series of pre-revolutionary enactments guaranteed that bail would be set in virtually all noncapital crimes. The Massachusetts Body of Liberties declared that all crimes were bailable except capital crimes, contempt in open court, and cases in which the legislature expressly denied bail. Massachusetts Body of Liberties, cl. 18, reprinted in 1 B. Schwartz, The Bill of Rights: A Documentary History 71, 73-74 (1971). Similarly, Pennsylvania's Frame of Government of 1682 required bail except for "capital offenses, where the proof is evident or the presumption great." Pennsylvania Frame of Government, cl. XI, reprinted in Schwartz at 132, 141. In 1683, New York required bail except for treason or felony. ("(F)elony cases were capital cases at the time", Schwartz at 163). New York Charter of Libertyes & Privileges, reprinted in Schwartz at 163, 166. Virginia's 1785 statute required admission to bail for any crime not punishable in life or limb. Other colonies followed the English pattern set in the Statute of Westminster the First discussed in n.12, supra. See generally Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. 959, 974-79 (1965)
 
 
 [19]
 Michigan is apparently the only other state that has a constitutional provision similar to Article I, § 9 of the Nebraska Constitution. Mich.Const. art. 1, § 15
 
 
 [20]
 We agree with the analysis made by Judge Weinfeld writing in United States ex rel. Covington v. Coparo, 297 F.Supp. 203 (S.D.N.Y.1969) where he observed:
 However, Congress could, without running afoul of the Eighth Amendment, also provide, for example, that persons accused of kidnapping, bank robbery with force and violence, or other serious noncapital crimes are not entitled to bail as a matter of right. This Congressional power, of course, is confined by the due process clause of the Fifth Amendment. Thus, I am of the view that Mr. Justice Burton, in his dissent in Carlson v. Landon, correctly defined the scope of the Eighth Amendment to "prohibit federal bail that is excessive in amount when seen in the light of all traditionally relevant circumstances. Likewise, it must prohibit unreasonable denial of bail."
 And as Congress is free, within constitutional limits, to define the classes of crimes which are bailable as a matter of right and those that are not, so, too, may the state legislatures. While the Supreme Court has not passed upon the direct issue, those federal courts which have are in accord that the Eighth and Fourteenth Amendments do not require the state to grant bail in all cases as a matter of right; all have recognized that a state may constitutionally provide that bail be granted in some cases as a matter of right and denied in others, provided that the power is exercised rationally, reasonably and without discrimination. Thus, it is left to the courts to fix the amount of bail in all cases where it is a matter of right and also in those instances where the court exercises its discretion favorably ; but, under the Eighth Amendment, where bail is fixed in either instance, it must not be excessive, and further, where bail is not a matter of right, the court may not arbitrarily or unreasonably deny bail.
 Id. at 206 (emphasis added).
 
 
 [21]
 The state also urges that this court's opinion in Mastrian v. Hedman, 326 F.2d 708 (8th Cir.), cert. denied, 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964), which was also cited extensively by the Nebraska Supreme Court, supports its view that the state may refuse to make provision for a right to bail. We, of course, do not argue with that proposition. Our concern is that such a denial must be based on reasoned factors relevant to the purpose of bail. Mastrian was an "excessive bail" case and did not involve an attempt by the state to deny bail for certain crimes. Furthermore, we note the opinion is an administrative order by two judges denying a certificate of probable cause to proceed on appeal in a habeas corpus case. The administrative order affords little precedential value
 
 
 [22]
 The Court of Appeals explained that the order was reversed and remanded to the district court because the Director:
 (M)ust state some fact upon which a reasonable person could logically conclude that the denial of bail is required to protect the country or to secure the alleged alien's presence for deportation should an order to that effect be the result of the hearing.
 Carlson v. Landon, 186 F.2d 183, 189 (9th Cir. 1950).
 
 
 [23]
 This determination is by summary proceeding to which the rules of evidence are not applicable. 2A Neb.Rev.Stat. § 27-1101(4)(b)
 
 
 [24]
 In Bell v. Wolfish the Court observed:
 A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to (the) extended restraint of (his) liberty following arrest." Gerstein v. Pugh, supra (420 U.S. 103), at 114, (95 S.Ct. 854 at 863, 43 L.Ed.2d 54); see Virginia v. Paul, 148 U.S. 107, 119 (13 S.Ct. 536, 540, 37 L.Ed. 386) (1893). And, if he is detained for a suspected violation of a federal law, he also has had a bail hearing. See 18 U.S.C. §§ 3146, 3148. Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.
 441 U.S. at 536-37, 99 S.Ct. at 1872.
 
 
 [25]
 Compare Hruska, Preventive Detention: The Constitution and the Congress, 3 Creighton L.Rev. 36 (1969); Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va.L.Rev. 1223 (1969) with Tribe, An Ounce of Detention: Preventive Justice in the World of John Mitchell, 56 Va.L.Rev. 371 (1970); Hickey, Preventive Detention and the Crime of Being Dangerous, 58 Geo.L.J. 287 (1969); Note, Preventive Detention: An Empirical Analysis, 6 Harv.C.R.-C.L.L.Rev. 289 (1971)
 
 
 [26]
 In the passage of the Bail Reform Act of 1966, 18 U.S.C. §§ 3146-52, the Senate and House Reports reflect historical concerns negating danger to the community as a relevant factor in denying pretrial release
 The Senate report states:
 The bill is not intended to deal with the problem of preventive detention of an accused because of the possibility that his liberty might endanger the public welfare, either because of the accused's predisposition to commit further acts of violence during the pretrial period, or because of the likelihood that his freedom might result in the intimidation of witnesses or the destruction of evidence. S.Rep.No.750, 89th Cong., 1st Sess. 5 (1965).
 The House report contains language to the same effect, and adds:
 It must be remembered that under American criminal jurisprudence pretrial bail may not be used as a device to protect society from the possible commission of additional crimes by the accused. H.R.Rep.No.1541, 89th Cong., 2d Sess. 6 (1966).
 Allen v. United States, 386 F.2d 634, 640 n.10 (D.C.Cir.1967).
 
 
 [27]
 In Hunt's brief, his attorney refers to a study contained in the record conducted by the Douglas County Public Defender's Office after this provision had been in effect for one year. It found that 32 defendants had been denied bail during the year. Twenty-two of these cases had reached final trial court disposition when the figures were compiled. Of these 22 defendants, only two were convicted of forcible first-degree sexual assault. Two others were acquitted and three had their prosecutions dismissed. The rest were either convicted of or entered guilty pleas to lesser bailable charges of sexual offenses or nonsexual offenses. While we do not base our conclusions on this study, it does illustrate the danger of making pretrial assumptions about the likelihood of conviction or the danger posed to the community by a class of individuals
 
 
 [28]
 We find guidance in the Supreme Court's decisions under the eighth amendment holding that mandatory death penalty requirements are unconstitutional. We recognize, of course, that the decision to impose a death penalty raises questions not posed here. In both situations, however, the state has enacted provisions preventing consideration of individual circumstances in the administration of criminal justice. In Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), Justice Stewart wrote:
 A third constitutional shortcoming of the North Carolina statute is its failure to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death. In Furman, (Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346), members of the Court acknowledged what cannot fairly be denied that death is a punishment different from all other sanctions in kind rather than degree. See 408 U.S., at 286-291 (92 S.Ct. at 2750, 2753) (Brennan, J., concurring); id. at 306, (92 S.Ct., at 2760) (Stewart, J., concurring). A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.
 Id. at 303-04, 96 S.Ct. at 2991.
 In comparison, statutes allowing imposition of the death penalty have withstood eighth amendment challenge where the court is directed to consider "the particularized nature of the crime and the particularized characteristics of the individual defendant." Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 2941, 49 L.Ed.2d 859 (1976). See also Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Cf. Godfrey v. Georgia, 446 U.S. 420, 427-28, 100 S.Ct. 1759, 1764-1765, 64 L.Ed.2d 398 (1980).
 
 
 [1]
 Since Hunt's lawyer has stipulated that, as to him, the proof of guilt is evident, or the presumption great, it seems likely that if any of his convictions is reversed, it will be on some ground unrelated to guilt or innocence