ERWIN CHARLES SIMANTS, APPELLANT, V. STATE OF
NEBRASKA, APPELLEE.

277 N. W. 2d 217

Filed April 3, 1979.   No. 42206.

Keith N. Bystrom and Scott P. Helvie, Lincoln County Public Defenders, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

Erwin Charles Simants filed a petition bearing the caption, ''Writ of Error Coram Nobis,'' in which he sought to set aside his conviction and sentence on each of six counts of murder in the first degree. The petition alleged irregularities and misconduct in connection with the sequestration and deliberations of the jury at trial which were not known to the petitioner or his counsel at the time of his trial, conviction, and sentence. Following a hearing in the District Court for Lincoln County, the court denied the petition for writ of error coram nobis, and the petitioner has appealed.

Erwin Charles Simants was charged with six counts of murder in the first degree. The plea to each count was not guilty by reason of insanity. Trial to a jury began on January 8, 1976, and continued through January 16, 1976. The jury returned a verdict of guilty on all counts on January 17, 1976, and on January 29, 1976, Erwin Charles Simants was sentenced to death by electrocution.

On January 5, 1978, Simants filed the petition in this case alleging that the Lincoln County sheriff, Gordon D. Gilster, was a principal and necessary witness for the State of Nebraska in prosecuting the murder case against petitioner; that during the trial the sheriff visited the motel in which the members of the jury and alternates were sequestered, and conversed, played cards, and associated with members of the jury and alternates. The petition also alleged that during the trial the judge who presided over the

trial visited the motel where the jury was sequestered and may have made communications with members of the jury.

The petition alleged that the petitioner and his attorneys had no knowledge of such actions at the time of trial or sentencing but obtained knowledge by subsequent interviews with members of the jury, and that the facts concerning such conduct, if known to the trial court prior to judgment and sentence, would have prevented the rendition of the judgment. The petition also alleged that the facts constituted a denial of defendant's constitutional rights such as to render the judgment void. The petition prayed that the conviction, judgment, and sentence of death by electrocution be set aside and the petitioner be granted a new trial.

The answer of the State alleged that although the trial judge was present at the motel on two occasions, he did not discuss the case or attempt to do so. The answer alleged that although the sheriff was present at the motel three times during sequestration, he did not discuss the case nor attempt to do so.

The judge at the original trial withdrew from this proceeding, and another judge presided thereafter. Some factual background as to the original trial is necessary in order to put the testimony at the present hearing in perspective. The facts are set out in full in State v. Simants, 197 Neb. 549, 250 N. W. 2d 881. The defendant was charged with the mass murder of six individuals on October 18, 1975. The plea of the defendant was not guilty by reason of insanity. There was little, if any, doubt as to all the essential facts of the killings. The critical issue was whether or not the defendant was legally responsible for his actions at the time. Expert witnesses for the State testified that the defendant was legally sane at the time of the murders, while expert testimony for the defendant was that the defendant was not legally sane at the time of the slayings.

Sheriff Gilster testified on two separate occasions during the trial. The sheriff's first appearance as a witness was on January 12, 1976. The sheriff's second appearance as a witness was on January 15, 1976, the next to last day of trial, when he was called as a rebuttal witness. On this occasion he testified principally about the actions of the defendant during his confinement, with particular reference to his mental condition. In answer to a question: "Has there ever been any act of the defendant in your presence which would indicate to you that he might have a mental problem?", the sheriff answered: "No." On cross-examination the sheriff admitted that he was not schooled in determining or looking for those things which would indicate a mental problem, but said that he had observed a number of people in transporting them back and forth from the Nebraska state institution. The sheriff testified that he knew the defendant pretty well because the defendant had been in his jail several times. It should be noted also that the defendant was in the personal custody of the sheriff during trial sessions, and Sheriff Gilster was therefore present in uniform inside the bar of the courtroom throughout the entire trial.

The jury was sequestered from January 8, 1976, until the conclusion of the case, at the Howard Johnson Motel in North Platte, Nebraska, under the orders of the presiding judge. The jurors occupied rooms in one wing of the motel that was closed and had two adjoining rooms that were used as recreation rooms. The jurors were fed in a dining room separated from the rest of the restaurant by a folding door partition.

In the present proceeding the trial judge testified that he went to the motel on two occasions to see that the sequestration orders were being properly carried out. The first visit was on January 8, the first night the jury was sequestered, and the second

visit was on the early evening of January 10, when he made an unannounced inspection trip. On each occasion the judge checked the jurors' accommodations and services and conferred with the motel manager or the bailiffs with respect to arrangements. He had no conversations with jurors except a cursory acknowledgement or response to a greeting or comment. He was at the motel for 10 to 20 minutes. The testimony of all the witnesses confirmed the testimony of the judge.

Sheriff Gilster testified that he made three visits to the motel during the period the jury was sequestered there. His first visit was on the evening of January 8, 1976, when he went to the motel to deliver a suitcase to a juror. He left the suitcase with a bailiff and then went to the jurors' private dining area and visited with the bailiff and with four or five jurors at a nearby table for 10 or 15 minutes.

Sheriff Gilster testified that his second visit to the motel was about 9 p.m., on a date somewhere near the middle of the trial. He went upstairs to the jurors' quarters and one of the jurors' recreation rooms. He testified that he saw and had conversations with several of the jurors while he was there, and that he stayed for approximately an hour.

The sheriff testified that his third visit at the motel was on Thursday night, January 15, 1976, the same day on which he had testified as a rebuttal witness in the case. He went upstairs to the jurors' quarters and one of the recreation rooms. There were four or five jurors in the room and the sheriff testified that he engaged in a general conversation. These conversations lasted approximately 30 minutes. After this visit the sheriff went into the adjoining recreation room where several other jurors were sitting. Some of the jurors were playing cards and invited the sheriff to join them. He did and played three games of blackjack for an estimated period of 6 or 7 minutes.

Although there were several minor conflicts, the major area of conflict in the testimony of the sheriff and that of the jurors involves the subject matter of their conversations. The sheriff testified the conversations were general and that he did not recall speaking of his experiences as sheriff which the jurors recalled that he did. The jurors' recollections were that he talked mostly about his experiences as sheriff. Some jurors recalled that the sheriff related to them an incident in which the sheriff was a witness at a trial in the county court. The sheriff told them that when an attorney objected to the sheriff's testimony, the county judge overruled the objection and made the comment that the sheriff was the only one who knew what he was talking about.

At the conclusion of 2 days of testimony at the hearing on the petition, the District Court found that the jury did not deliberate except in the jury room; that the presiding judge acknowledged greetings from members of the jury and tersely answered one personal question of a juror; and if either or both combined were determined to be communications to the jury or any members thereof, it was not prejudicial error.

The District Court found that Sheriff Gilster made unwarranted contacts with members of the jury on three occasions, which the court found constituted error since Sheriff Gilster was a witness in the murder trial. The court determined, however, that the unwarranted contacts were not prejudicial and the testimony of the sheriff as a rebuttal witness in the murder trial, although it was controverted, was cumulative and not crucial. The District Court therefore denied the petition for writ of error coram nobis and the petitioner has appealed.

The present proceeding was brought in the form of a petition for writ of error coram nobis. This court has consistently held that a writ of error coram

nobis reaches only matters of fact unknown to the applicant at the time of judgment and not discoverable by him with reasonable diligence, which fact or facts are of such a nature that, if known to the court, would have prevented entry of the judgment. State v. Turner, 194 Neb. 252, 231 N. W. 2d 345; State v. Wilson, 194 Neb. 587, 234 N. W. 2d 208.

If the evidence in the record now before us had been available and brought to the attention of the trial court prior to judgment, that evidence would have constituted grounds for a mistrial, but would not necessarily have prevented the entry of judgment. The petition, however, did allege a denial or infringement of constitutional rights of the petitioner such as to render the judgment void or voidable under the Nebraska Post Conviction Act, sections 29-3001 to 29-3004, R. R. S. 1943. Post conviction relief is cumulative, and under the facts and evidence in this record the proceeding will be treated as one for post conviction relief. See State v. Turner, *supra*.

At the conclusion of the evidentiary hearing in this proceeding, the District Court found that the jury did not deliberate except in the jury room. The court also found that even if the two minor contacts with the jury by the judge who presided at the trial were determined to be communications, they were not prejudicial. The evidence supports both of those findings. The actions of the presiding judge in personally verifying that his orders as to sequestration of the jury were being carried out were appropriate, and did not constitute unwarranted or improper communications with the jury.

The fraternization of Sheriff Gilster with the members of the jury during the course of the trial presents problems of constitutional dimensions. The sheriff was an important lay witness on the issue of the sanity of the defendant, which was the only real issue in the murder trial. The jury had to decide the question of Simants' sanity. The expert testimony

was conflicting on that point. The jury had to weigh that testimony. In deciding the issue, the opinion testimony of a lay witness in whom the jury may have had special confidence because of unwarranted contacts such as are shown by the evidence may have been the critical factor in determining the one key issue which was determinative of the defendant's guilt or innocence. Sheriff Gilster had no valid reason or excuse for communicating or fraternizing with the jury. An inference may be drawn that the sheriff was attempting to enhance his credibility and reliability as a witness in the eyes of the jury. There can be no doubt whatever that the trial court was correct in finding that the sheriff's contacts with the jury on the three occasions disclosed by the evidence were unwarranted, as well as erroneous.

The critical issue in this case is whether the conviction must be reversed because of unauthorized and unwarranted communications and fraternization between the jurors and an important witness in a criminal trial. All courts agree that such conduct is improper but the courts are not in agreement as to the appropriate rules to be applied. Some courts take the view that in the absence of a showing of actual prejudice to the defendant arising from the unauthorized communication the conviction should be affirmed notwithstanding the impropriety. Other courts hold that there is a presumption of prejudice arising from the unauthorized communications which, unless successfully repudiated by the prosecution, taints the conviction and entitles the defendant to a reversal. See, 75 Am. Jur. 2d, Trial, § 1008, p. 849; Annotation, 9 A. L. R. 3d 1275.

We believe the better view to be that when an improper communication with a juror or jurors is shown to have taken place in a criminal case, a rebuttable presumption of prejudice arises and the burden is on the State to prove that the communication was not prejudicial. See, State v. Brown, 84

S. D. 201, 169 N. W. 2d 239; State v. Jones, 363 Mo. 998, 255 S. W. 2d 801; Sunderland v. United States, 19 F. 2d 202 (8th Cir., 1927).

The rule is almost universal that unauthorized private communications between jurors and third persons or witnesses during the course of jury deliberations are absolutely forbidden and invalidate the verdict unless their harmlessness is made to appear. See, Cooney v. State, 61 Neb. 342, 85 N. W. 281; Clyde Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917.

The case of Turner v. State of Louisiana, 379 U. S. 466, 85 S. Ct. 546, 13 L. Ed. 2d 424, extended the rule of presumption of prejudice to communications and fraternization between jurors and key witnesses outside the course of jury deliberations but while the jury was sequestered. The two witnesses in that case were also bailiffs who were in charge of the sequestered jury during a 3-day trial. In reversing the murder conviction, the United States Supreme Court said: "And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. * * *

"It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecution witnesses who were *not* deputy sheriffs. But the role that Simmons and Rispone played as deputies made the association even more prejudicial." The principle set out in Turner was followed by the Supreme Court in the later case of Gonzales v. Beto, 405 U. S. 1052, 92 S. Ct. 1503, 31 L. Ed. 2d 787.

The foundational basis for the rule of presumptive prejudice is that a fair trial in a fair tribunal is a basic requirement of constitutional due process.

The reasons for the rule have been variously expressed by the courts. " 'The verdict of a jury * * * should represent the concurring judgment, reason and intelligence of the entire jury, free from outside influence from any source whatever.' " Bramlett v. State, 129 Neb. 180, 261 N. W. 166.

"It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiassed judgment. Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated." Clyde Mattox v. United States, *supra*.

"The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury. 'The jury is an essential instrumentality—an appendage —of the court, the body ordained to pass upon guilt or innocence. Exercise of calm and informed judgment by its members is essential to proper enforcement of law.' " Turner v. State of Louisiana, *supra*.

At the hearing in the present proceeding the parties and the court proceeded on the premise that any unwarranted or unauthorized communications with the jurors were improper and erroneous. The trial court found, however, that the unwarranted and erroneous communication and fraternization by the sheriff with the jurors was not prejudicial. The State's position is that it has established a lack of prejudice because each of the jurors, in answer to a question by the State as to whether he or she had been influenced or affected by the presence of the sheriff at the motel, over objection by the defendant, said "no."

The defendant contends that such evidence was inadmissible and was improperly admitted. Section 27-606(2), R. R. S. 1943, specifically provides that upon an inquiry into the validity of a verdict in a

case such as this "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. * * *."

In State v. Steinmark, 201 Neb. 200, 266 N. W. 2d 751, this court said: "Under this statute a juror may testify as to whether 'extraneous prejudicial information was improperly brought to the jury.'s attention.' No evidence may be received as to the effect of any statement upon a juror's mind, its influence one way or another, or the mental processes of a juror in connection therewith."

The trial court quite properly found that the communications and fraternization of the sheriff with the jurors here was unwarranted and erroneous, but also found that it was not prejudicial to the defendant because the sheriff's testimony on the controverted issue of sanity was cumulative. Such a conclusion bypasses entirely the crucial issue of whether the sheriff's conduct might have influenced the jury verdict. It may be reasonably inferred, on the basis of the record here, that the sheriff's conduct was intended to persuade the jurors that he was conscientious in the performance of his official duties and to convince them of his reliability and credibility as a witness. Whatever its motivation, the sheriff's conduct was unwarranted, erroneous, and presumptively prejudicial. Under such circumstances, the State has the burden of showing beyond a reasonable doubt that such conduct was harmless. See, Chapman v. California, 386 U. S. 18, 87 S. Ct.

824, 17 L. Ed. 2d 705; State v. Rice, 188 Neb. 728, 199 N. W. 2d 480.

To support its contention that the erroneous conduct here was harmless, the State relies upon several cases involving improper witness contacts with a jury in which courts have held that the State had successfully overcome the presumption of prejudice. Those cases are clearly distinguishable in that they involve cases where the contacts of the witnesses with the jurors were minimal or cases where the testimony of the witness at the trial involved only formal or uncontroverted issues. Under the evidence in the case now before us actual prejudice or a lack of prejudice can be determined only by inference or by speculation. Under such circumstances the State has failed to overcome the presumption of prejudice, and has failed to meet the burden of showing that the unwarranted and erroneous conduct of the sheriff was harmless.

A fair trial before a fair and impartial jury is a basic requirement of constitutional due process. To condone the conduct of Sheriff Gilster in this case would violate the fundamental integrity of all that is embraced in the constitutional concept of a fair trial by a fair and impartial jury. The stability and integrity of the American system of justice demands that those principles be maintained inviolate. Under the circumstances here the convictions and sentences of the defendant must be vacated and the cause remanded to the District Court for further proceedings.

CONVICTIONS AND SENTENCES VACATED.
CAUSE REMANDED FOR FURTHER
PROCEEDINGS.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the opinion which holds that under the evidence in this case prejudice or lack of prejudice can be determined only by inference and speculation. It seems to me that this

amounts to an application of the prejudice per se rule rather than the mere presumption of prejudice rule which the court declares is the applicable rule.

The trial court held a full, fair, and complete hearing on the petition of the defendant at which he was represented by able counsel. All of the jurors were examined during the hearing. At the conclusion of 2 days of testimony the trial court found that the contacts between the sheriff and the jury did not affect the verdict and were not prejudicial to the defendant. This court now finds as a matter of law that the record does not support the decision of the trial court.

The sheriff's testimony for the most part related to factual matters which he had observed and was not disputed or contradicted. It was to some extent cumulative. There is no contention that the sheriff at any time discussed the case then being tried with any of the jurors. None of the contacts occurred after the case had been submitted to the jury. I am unable to say that the decision of the trial court was clearly wrong.