STATE OF NEBRASKA, APPELLEE, V. JACK F. VAIL,
APPELLANT.

286 N. W. 2d 97

Filed December 11, 1979.   No. 42416.

Kirk E. Naylor, Jr., for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from a criminal action which charged the defendant, Jack F. Vail, with unlawfully delivering marijuana and cocaine in violation of section 28-4,125, R. R. S. 1943.   The jury found the defendant guilty of both counts.   The court sentenced the defendant to a term of probation for 2 years, a fine of $500 on each count, and assessed the costs of the action.   The defendant moved for a new trial based upon an alleged improper communication by

(1)

the trial judge to the jury. The motion was denied and defendant perfected this appeal.

The conviction arose from a drug transaction at the defendant's residence. On June 7, 1977, at approximately 10:45 p.m., Paul Wagner, an officer of the Nebraska State Patrol, and two confidential informants, Michael Gibbany and Kevin Wall, arrived at the defendant's residence to purchase drugs. Gibbany and Wall were acquainted with the defendant and had arranged the meeting. An electronic recording device was concealed on Gibbany's body. The defendant arrived at the farmhouse shortly after the three men. Gibbany asked the defendant if he could purchase marijuana and cocaine. The defendant indicated "that he could fulfill [their] needs." Gibbany followed defendant into the house and "snorted" two lines of cocaine at defendant's insistence. Gibbany agreed to purchase a gram of cocaine. Defendant informed him the price was $100 a gram. Gibbany went back to the porch to get $50 from Wagner. The investigating officer told him to try to "score a bag or some marijuana." The defendant agreed to sell Gibbany a bag. Gibbany waited on the front porch. Shortly thereafter, the defendant emerged with a bag of marijuana which he gave to Wall. Wagner, Gibbany, and Wall left at approximately 11:35 p.m. Vail was subsequently arrested and charged with delivery of marijuana and cocaine.

The defendant tendered an alibi defense at trial. Defendant testified that he was employed at the Farmland Foods plant as a loading supervisor and remained at the plant after the dockworkers left. Defendant asserted that he then went to a restaurant and did not return home until 1 a.m., June 8, 1977. A roommate corroborated his testimony.

The tape produced from Gibbany's electronic device was introduced into evidence. The tape was played to the jury during trial on a battery-operated

Uher tape recorder. The jury played the tape again during deliberations. Because of the poor sound quality, the jury foreman asked the bailiff if the batteries of the recorder might be recharged. The bailiff advised the prosecutor and the judge. The bailiff did not notify the defendant or his counsel. The judge and prosecutor determined a substitute tape recorder should be obtained because it would take too long to recharge the batteries. The court reporter provided a similar sized tape recorder. The bailiff instructed the jury foreman on the operation of the recorder.

At an evidentiary hearing on the motion for a new trial, two jurors testified the substitute recorder improved the quality of the tape. Certain words and phrases not audible on the old recorder were understandable on the substitute recorder. Specifically, the words "Come on, Earl" were discernible on the new recorder. The jurors testified that their discussion, after hearing the phrases containing defendant's nickname, generally centered upon the significance of that phrase.

Approximately one-half hour after listening to the tape, the jury returned a verdict of guilty on both counts.

Defendant contends the court erred by not informing the defense counsel of the jury's request for a new recorder. Normally a judge's communication with the jury outside the presence of the accused is reversible error only if the communication was prejudicial. This is the so-called "harmless error" rule. The first question is whether the court "communicated" with the jury outside the presence of defendant. If the court did "communicate" with the jury outside the presence of defense counsel, then in order to set aside the verdict, a determination must be made that the communication prejudiced the defendant.

In Nebraska, the harmless error rule is set out in

State v. White, 191 Neb. 772, 217 N. W. 2d 916 (1974). In this case, defendant appealed from a conviction of possessing heroin with the intent to distribute or deliver it. Outside the presence of the accused, the court instructed the jury to disregard a portion of the instructions dealing with agency. The defendant contended the trial judge erred by giving this instruction. This court said: "Under the evidence, that part of the instruction was surplusage as there was no question of agency raised. Although the giving of the instruction in the absence of the defendant was error, it was harmless error. There is reversible error if the record affirmatively shows that defendant has been prejudiced by private communication between the trial court and jurors, and a new trial should be granted where the record is silent as to a possibility of prejudice, * * *."

It is obvious that the furnishing of a substitute recorder is not a communication in the sense of State v. White, *supra*, or United States v. Treatman, 524 F. 2d 320 (8th Cir., 1975) (clarifying instruction given to the jury outside of presence of defense counsel), or State v. Simants, 202 Neb. 828, 277 N. W. 2d 217 (1979) (conversation by key prosecution witness with jury while sequestered). We would be reluctant to set forth a rule which suggests that a failure of equipment designed to examine evidence properly admitted results in an improper communication, error, and possible reversal.

Rather, the question is whether the defendant's rights to confrontation under the Sixth Amendment of the United States Constitution were abridged when words were heard in the jury room not previously heard in the courtroom. A defendant is entitled to see and hear the witness and other evidence presented against him at trial. Douglas v. Alabama, 380 U. S. 415, 85 S. Ct. 1074, 13 L. Ed. 934 (1965).

Defendant concedes the words "Come on, Earl"

were on the tape at all times; the tape itself was received in evidence with proper foundation; and he does not assert that the tape was not at all times available to him for inspection prior to the trial.

We think that the matter is similar in principle to State v. Everson, 166 Wash. 534, 7 P. 2d 603 (1932). This was an appeal by the defendant from his conviction of the crime of manslaughter. The decedent was walking along the left-hand side of the road and was carrying a walking stick. The decedent was struck and found unconscious. The defendant was found in a drunken state, and the walking stick of the deceased was then hanging from underneath his car. The walking stick was introduced into evidence, and was in the jury room during the time that the jurors were deliberating their verdict. The stick was examined by the jurors to determine whether the grain of the wood in one end was bent over, which would indicate whether it had been rubbing in the gravel. One of the jurors produced a magnifying glass which had not been introduced in evidence. Holding that the use of the magnifying glass was not reversible error, the court stated: "The walking stick was introduced in evidence, and the jury merely more critically examined it by aid of a magnifying glass. This did not put them in possession of material facts which were not already in evidence."

The use of a substitute tape recorder was merely a more critical examination of evidence properly before the jury. The defendant's rights of confrontation were not violated. The judgment and sentence of the trial court is affirmed.

AFFIRMED.