Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/30/2020 08:08 AM CDT

**State of Nebraska, appellee, v.
James M. Madren, appellant.**

\_\_\_ N.W.2d \_\_\_

Filed June 23, 2020.    No. A-19-240.

1. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.
2. **Motions for New Trial: Appeal and Error.** The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.
3. **Trial: Witnesses: Appeal and Error.** To establish reversible error due to a violation of a sequestration order, a defendant must make a showing of prejudice.
4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
5. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
6. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
7. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

8. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

9. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

10. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion.

11. **Motions for New Trial: Appeal and Error.** A trial court's denial of a motion for new trial is reviewed for an abuse of discretion.

12. **Trial: Juries.** Although the presence of a discharged alternate juror in the jury room constitutes an unwarranted intrusion upon the jury and is to be guarded against, not every such intrusion requires a new trial.

13. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

14. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

15. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

16. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

17. ____: ____. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

18. **Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

19. **Trial: Effectiveness of Counsel: Presumptions: Appeal and Error.** In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

20. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

21. **Rules of Evidence: Hearsay: Sexual Assault: Minors.** Statements made by a child victim of sexual abuse to a forensic interviewer in the chain of medical care may be admissible under Neb. Rev. Stat. § 27-803(3) (Reissue 2016), even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes.

22. **Rules of Evidence: Hearsay: Police Officers and Sheriffs.** The fundamental inquiry to determine whether statements, made by a declarant who knew law enforcement was listening, had a medical purpose is if the challenged statement has some value in diagnosis or treatment, because the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment.

23. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

24. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence in the commission of the crime.

25. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Moore, Chief Judge, and Arterburn and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

James M. Madren was convicted by a jury of first degree sexual assault. Madren argues the trial court erred in failing to timely discharge an alternate juror, allowing evidence in contradiction to the court's previous in limine and sequestration orders, accepting the jury's verdict without sufficient evidence to convict him, and imposing an excessive sentence. He also argues that his counsel was constitutionally deficient and that an aggregate of error warrants a reversal. We affirm his conviction and sentence.

## II. STATEMENT OF FACTS

Madren was charged with one count of first degree sexual assault, a Class II felony. Specifically, the State alleged that Madren, being a person 19 years of age or older, subjected L.O., a person at least 12 years of age but less than 16 years of age, to sexual penetration. The evidence adduced at trial established that Madren was born in August 1981 and that L.O. was born in January 2003.

In May or June 2017, L.O.'s father allowed Madren, a longtime friend who needed a place to live, to temporarily reside with his family. After Madren moved into the family home, Madren and L.O. began spending time together, including watching movies or preparing meals for L.O. and her brothers. L.O. testified that Madren eventually asked her if she would be his girlfriend and that she agreed. L.O. also testified Madren began privately referring to L.O. as "'baby'" and began hugging and kissing her and touching her thighs, legs, and shoulders over her clothes. L.O. testified that she and Madren had sexual intercourse during her freshman year of high school. At that time, L.O. was 14 years old and Madren

was 36 years old. Madren moved out of the family home in November 2017.

The State also offered into evidence text messages between Madren and L.O., including pictures Madren sent to L.O. while he was out of town. After L.O.'s mother discovered the nature of L.O.'s relationship with Madren, including L.O.'s admission that she and Madren had sexual intercourse, the incidents were reported to the police and L.O. was eventually interviewed by staff at Project Harmony, a child advocacy center.

During the trial, over Madren's "foundation" objection, L.O.'s mother testified that after L.O. received counseling at Project Harmony, she sought treatment for L.O. at the recommendation of L.O.'s therapist, including having L.O. taken in for further evaluation and a medical evaluation that was in process. L.O.'s mother was allowed to testify about her observations of how L.O.'s condition affects L.O.'s daily life, which observations included that L.O. took long periods of time to process information; that L.O. struggled with comprehension at school; and that when confronted with questions, she would delay before answering due to her limitations in processing. L.O.'s mother was not allowed to testify as to any specific medical diagnosis for L.O.

Following L.O.'s mother's testimony, a brief recess was taken prior to L.O.'s testimony. During the recess, L.O.'s mother spoke with L.O. in the courthouse rotunda while the two embraced and cried. Due to concern expressed by Madren's counsel that the interaction was seen by some jurors, the judge informed the jury that during the recess, there was an interaction between L.O.'s mother and L.O. in the rotunda, and the court inquired if anyone had seen it. When certain jurors responded they had seen the interaction, the court inquired as to whether anything about the interaction would impact their decision on the evidence received in the courtroom as to which all the jurors stated it would not.

After closing arguments, the case was submitted to the jury. However, about 1 hour after the case was submitted to

the jury, Madren's counsel advised the court that it had failed to discharge the alternate juror. As a result, the court informed the jury it had failed to remove the alternate juror, apprised the alternate juror that she was the alternate, and then dismissed her. The district court then instructed the jury to again refer to the instructions and asked the jury to start deliberating again "from scratch." The court stated it did not want to inquire to what extent the jury had communicated back and forth, but that because of the presence of the alternate, the jurors needed to begin deliberations as if they started then and without the alternate. Upon being asked if that made sense, the jurors responded affirmatively. After the jury was sent back to the jury room to deliberate, Madren's counsel moved for a mistrial on the basis of the court's delayed discharge of the alternate juror, which motion was overruled by the court. The jury convicted Madren of first degree sexual assault.

After the jury returned its verdict, the district court again addressed the jury regarding the alternate juror. Specifically, the court inquired whether the jury, in reaching the verdict, had considered any conversations or participation of the alternate juror while she was in the room, to which the jurors responded in the negative. Madren filed a motion for new trial, which included allegations that L.O. and her mother were observed crying and embracing following L.O.'s mother's testimony, these activities were viewed by the jury, and the viewing of said activities by members of the jury was unfairly prejudicial to Madren and prevented him from having a fair trial. Madren's motion for new trial was overruled. The district court sentenced Madren to 30 to 38 years' imprisonment with credit for 358 days served.

### III. ASSIGNMENTS OF ERROR

Madren's assignments of error, restated and renumbered, are as follows: (1) The court erred in overruling his motion for mistrial and motion for new trial on the court's delayed discharge of the alternate juror, (2) the court erred in failing

to enforce its order in limine, (3) the court erred in failing to enforce its sequestration order, (4) the record contains insufficient evidence to convict Madren of violating Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016), (5) Madren received ineffective assistance of counsel at trial in various ways, (6) the accumulation of errors requires a reversal of his conviction and a remand of the cause for new trial, and (7) the sentence imposed was excessive.

## IV. STANDARD OF REVIEW

[1,2] Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *Id.*

[3] To establish reversible error due to a violation of a sequestration order, a defendant must make a showing of prejudice. *State v. Cottingham*, 226 Neb. 270, 410 N.W.2d 498 (1987).

[4,5] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Briggs, supra.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

[6] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[7] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.*

[8,9] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. Alternate Juror

[10,11] Madren first argues the court erred in overruling his motion for mistrial and later his motion for new trial relating to the court's late discharge of the alternate juror. The decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Aguilar*, 268 Neb. 411, 683 N.W.2d 349 (2004). Likewise, a trial court's denial of a motion for new trial is reviewed for an abuse of discretion. See *State v. Briggs, supra*. In either case, we must now determine whether the trial court abused its discretion in not granting Madren's motions for failing to timely discharge the alternate juror.

[12] The legal framework for a court's failure to discharge an alternate juror was discussed at length by the Nebraska Supreme Court in *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991). After reviewing the constitutional and statutory rights to a 12-person jury in relation to a court's late discharge of an alternate juror, the Supreme Court held:

There can thus be no question that the bailiff's inexplicable misconduct violated defendant's federal and state constitutional rights to a fair and impartial trial. The controlling question becomes whether that violation compels reversal of his convictions.

In *Simants v. State*, 202 Neb. 828, 277 N.W.2d 217 (1979), the sheriff, who also testified as a material witness, fraternized with the jurors during sequestration. The trial court found the communications unwarranted, but ruled they did not rise to a level prejudicing the accused. In reversing, this court observed that "when an improper communication with a juror or jurors is shown to have taken place in a criminal case, a rebuttable presumption of prejudice arises and the burden is on the State to prove that the communication was not prejudicial," *id.* at 835, 277 N.W.2d at 221, saying: "The foundational basis for the rule of presumptive prejudice is that a fair trial in a fair tribunal is a basic requirement of constitutional due process. The reasons for the rule have been variously expressed by the courts. '"The verdict of a jury . . . should represent the concurring judgment, reason and intelligence of the entire jury, free from outside influence from any source whatever."' *Bramlett v. State*, 129 Neb. 180, 261 N.W. 166 ([1935])." *Simants, supra* at 836-37, 277 N.W.2d at 222. The *Simants* court also declared that the occurrence of unauthorized private communications was forbidden and would invalidate the verdict unless it was shown to be harmless error. In other words, *Simants* concluded that not all errors, even if of constitutional magnitude, entitle an accused to the reversal of an adverse trial result; it is only a prejudicial error, that is, an error which cannot be said to have been harmless beyond a reasonable doubt, which requires that a conviction be set aside. *State v. Hartmann*, [239 Neb.] 300, 476 N.W.2d 209 (1991); *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991); *State v. Chapman*,

234 Neb. 369, 451 N.W.2d 263 (1990); *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). See, also, *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988).

*State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984), applied the same doctrine in determining that LeBron had not been prejudiced by the fact that two jurors had overheard the judge and his law clerk discussing the case. See, also, *Sunderland v. United States*, 19 F.2d 202 (8th Cir. 1927) (juror conversing with witness).

In *Gandy v. State*, 24 Neb. 716, 40 N.W. 302 (1888), the court officer having charge of the jury sat in on a portion of the jury's deliberations. The *Gandy* court, in following *People v. Knapp*, 42 Mich. 267, 3 N.W. 927 (1879), adopted the rule that the officer's mere presence in the jury room deprived the jury of the opportunity for private and confidential discussion and was thus grounds for automatic reversal. In so holding, this court wrote in *Gandy, supra* at 727, 40 N.W. at 306: "It is the policy of the law that the verdict of every jury shall be reached by free and deliberate consultation, without bias or prejudice, and be based upon the evidence. The evidence is to be carefully weighed, the instructions to the court considered, and a conclusion reached which shall satisfy each member of the jury. This can only be had by preventing an intrusion for any considerable time by the bailiff, or others, while the jury are considering their verdict."

The same view was reiterated in *Cooney v. State*, 61 Neb. 342, 85 N.W. 281 (1901), wherein the sheriff and officer having charge of the jury remained with the jury during several hours of deliberations. The *Cooney* court found that while neither party participated nor advised the jury in any manner, their presence had deprived Cooney of a substantial right. However, the *Cooney* court noted that "the presence of" a court officer "or other intruder in the jury room for a short time while the jury

are deliberating, will [not] in every case vitiate the verdict rendered . . . ." *Id.* at 344, 85 N.W. at 282. The *Cooney* court thus recognized that not every intrusion into the jury room automatically results in prejudice to an accused. It is only those intrusions which result in prejudice to an accused, that is, intrusions into the jury room by third parties of a nature which cannot be said to have been harmless beyond a reasonable doubt, which require that a conviction be set aside.

The presence in the jury room of a discharged alternate juror is qualitatively different from the presence of a court officer or of a law enforcement officer, as occurred in *Gandy* and *Cooney.* A court officer might be expected to be present to monitor the jury's discussions for some purpose of the court; the presence of a law enforcement officer could be expected to inhibit criticism of the State's case. The presence of both a court officer and a law enforcement officer increases the inhibitory effect. However, a discharged alternate juror represents neither the State nor the court. Thus, although the presence of such an alternate in the jury room constitutes an unwarranted intrusion upon the jury and is to be guarded against, not every such intrusion requires a new trial.

*State v. Menuey*, 239 Neb. 513, 521-24, 476 N.W.2d 846, 852-53 (1991).

Based upon the conclusion that an alternate juror's presence only requires a new trial if that juror's presence prejudiced the defendant, the Nebraska Supreme Court went on to explore what evidence the court could rightfully consider in determining whether prejudice ensued from the alternate juror's presence and whether any such prejudice resulted in that case. In doing so, the Supreme Court held:

Neb. Rev. Stat. § 27-606(2) (Reissue 1989) provides that a juror may not be questioned about any "matter or statement occurring during the course of the jury's deliberations," but may testify regarding whether any

"outside influence was improperly brought to bear upon any juror." In *State v. Roberts*, 227 Neb. 489, 493, 418 N.W.2d 246, 249 (1988), we held that § 27-606(2) "controls inquiries into the validity of a verdict reached by a jury." The trial judge in *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984), upon discovering the overheard conversation described . . . above, examined the jurors to determine whether they were nonetheless capable of rendering a fair and impartial verdict and, in refusing to declare a mistrial, concluded that there was no prejudice to LeBron. We affirmed. The Missouri courts have also found convincing affidavits by jurors establishing that they were not influenced by a discharged alternate juror's presence. *State v. Scrivner*, 676 S.W.2d 12 (Mo. App. 1984).

*Menuey*, 239 Neb. at 524, 476 N.W.2d at 853-54.

Based upon uncontradicted testimony from the jurors that the alternate juror's presence did not influence them, the court in *Menuey* ultimately concluded that the alternate juror's presence did not prejudice the defendant and that such presence of the alternate juror did not require a new trial.

Similar to *Menuey*, here, the district court discovered that it failed to discharge the alternate juror after allowing the jury to begin deliberations. Once the error was brought to the court's attention after about 1 hour, the court interrupted the jury, discharged the alternate, and instructed the jury to start over "from scratch" with its deliberations and to refer to the instructions governing the jury's duties. In addition, after the jury returned its verdict, the court again addressed the matter with the jury stating:

Ladies and Gentlemen, I'm going to make additional inquiry for the purposes of the record. And this is because I had erroneously allowed [the alternate juror] to remain with you. I asked you when you went back after I excused [the alternate juror] to commence your deliberations anew as if starting from scratch. I will ask you, did

any one of you in reaching your verdict consider any of the conversations or participation of [the alternate juror] while she was with you in the jury room? If any of you did, please let me know.

(No audible response.)

THE COURT: None of the jurors having responded, the record will show that this is a unanimous verdict of this jury. Judgment will be rendered on the verdict.

Pursuant to Neb. Rev. Stat. § 27-606(2) (Reissue 2016), the court was allowed to inquire and did inquire into whether "any outside influence was improperly brought to bear upon any juror" in relation to the alternate juror, and the uncontradicted evidence establishes that the alternate's presence did not influence the jury deliberations and did not prejudice Madren. Accordingly, the court did not abuse its discretion in overruling Madren's motion for mistrial or motion for new trial in connection with the court's original error in failing to timely discharge the alternate juror.

### 2. Order in Limine

Madren next assigns that the district court erred in failing to enforce its order with respect to Madren's motion in limine. More specifically, before the commencement of trial, Madren made an oral motion in limine to prohibit the State from offering any evidence regarding L.O.'s diagnosis of autism. In support of that motion, Madren argued that the State had not endorsed any witness who could offer a medical opinion of that nature and that persons associated with Project Harmony had not met with L.O. long enough to establish any kind of diagnosis. In response, the State expressed it intended to offer evidence from L.O.'s mother governing her observations of L.O.'s problems with comprehension and delays in responding as those issues might relate to her ability to testify, but that it did not intend to offer evidence of a diagnosis of the cause of her condition which was still being studied. The court sustained the motion only to the extent that the court prohibited

the mother from identifying the diagnosis, but found that the mother was free to describe the conditions she observed which led her to have her daughter tested.

At trial, when the victim's mother began to describe the conditions which led her to have her daughter seek medical assistance, Madren's counsel objected by stating, "[I] [a]sk for a continuing objection regarding any testimony regarding any kind of diagnosis for lack of foundation pursuant to the Court's ruling." The continuing objection was granted. L.O.'s mother went on to describe the problems she had observed with her daughter with concentration and mental processing and that she was now seeking medical assistance in relation to the conditions, but L.O.'s mother did not offer any kind of diagnosis consistent with the court's ruling. Madren's objection here is that the court erred in not enforcing its prior ruling; however, the record very clearly indicates the court's trial rulings were consistent with its pretrial ruling. Because L.O.'s mother never provided nor attempted to provide a diagnosis in a manner inconsistent with the court's order in limine or counsel's specific objection at trial, this assignment of error fails.

### 3. Sequestration Order

Madren similarly argues the district court failed to enforce its sequestration order in relation to L.O. and her mother. Again, the record clearly indicates the court issued a sequestration order directing the jury that any witness who was going to testify at trial could not be present when another witness testified nor were they allowed to discuss testimony among themselves.

Madren argues that following L.O.'s mother's testimony and during a break, L.O.'s mother and L.O. were seen hugging and crying outside the courtroom in the rotunda and jurors saw the exchange. Madren argues that this was a violation of the sequestration order and moved for a mistrial which was subsequently overruled by the court.

As we previously noted, the decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Aguilar*, 268 Neb. 411, 683 N.W.2d 349 (2004). Here, contrary to Madren's argument, there is no evidence that L.O. or her mother were discussing the mother's trial testimony in violation of the court's specific sequestration order and the prosecutor's very specific admonition to L.O. and her mother not to discuss it. The record reflects only an emotional exchange between L.O. and her mother in the rotunda following the mother's testimony. Following the interaction and Madren's counsel's voiced concerns that members of the jury saw the interaction, the court asked the specific jurors who acknowledged they saw the exchange, "Is there anything about that interaction that's going to affect your decision on the evidence received here in the courtroom?" The jurors responded, "'No.'" Because the record does not reflect a violation of the sequestration order and because of the trial court's specific inquiry and the response of the jurors relating to the interaction, we cannot say the court abused its discretion in failing to grant a mistrial because of this interaction between L.O. and her mother during the trial. This assignment of error fails.

### 4. Insufficiency of Evidence

Madren next argues that there was insufficient evidence offered at trial to convict him of violating § 28-319(1)(c).

Section 28-319 provides, in relevant part:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

Because the record clearly establishes that Madren was over 19 years of age and L.O. was between 12 and 16 years of age at the time of the incident, this case against Madren was predicated on whether Madren subjected L.O. to sexual penetration during that time. Although he recognizes that L.O. specifically testified that Madren penetrated her vagina with his penis, Madren argues:

The record reflects that the State's case against Madren was predicated on [L.O.'s] testimony that Madren had "sex" with her. . . . The record does not contain corroborative evidence—in the form of medical or testamentary evidence—that confirms or tends to confirm [L.O.'s] account. Madren acknowledges that, pursuant to § 29-2028, the State was not required to corroborate [L.O.'s] testimony; but, Madren contends that, alone, [L.O.'s] self-proving testimony regarding the material facts related to the elements of § 28-319(1)(c)—in light of her admission on the witness stand that she lied regarding the number of times that said sex allegedly occurred and in light of her inability to identify when said sex allegedly occurred—was insufficient evidence upon which the trier of fact could rely to determine beyond a reasonable doubt that Madren violated § 28-319(1)(c).

Brief for appellant at 26. Stated differently, Madren's argument is that due to L.O.'s lack of credibility, her testimony should be discounted and his conviction set aside.

Yet, as our Supreme Court has continually stated:

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Dady*, 304 Neb. 649, 667, 936 N.W.2d 486, 500-01 (2019).

Here, although L.O. differed in her testimony with regard to the number of times Madren had sexual intercourse with her, she unequivocally and consistently testified that, while in her bedroom, Madren penetrated her vagina with his penis within the short period of time he lived with her family in their home. We will not pass on the credibility of or reweigh the evidence here. In viewing the evidence in the light most favorable to the State, based upon L.O.'s testimony, we find a rational trier of fact could have found the essential elements of first degree sexual assault beyond a reasonable doubt. Madren's assignment of error fails.

## 5. Ineffective Assistance of Counsel

Madren next argues that his trial counsel was ineffective in (1) failing to offer evidence in support of his motion for new trial, (2) failing to object to incriminating "expert" testimony, (3) eliciting incriminating evidence against Madren, and (4) failing to object to hearsay testimony that established an element of § 28-319(1)(c).

[13-19] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id.* Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,

466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *Id.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). We now make those determinations for each of Madren's specific assignments of error.

(a) Trial Counsel's Failing to Offer Evidence
in Motion for New Trial

Madren first assigns that his trial counsel was deficient for failing to offer evidence in connection with his motion for new trial. In furtherance of this assignment of error, Madren argues that pursuant to Neb. Rev. Stat. § 29-2101 (Reissue 2016), his trial counsel had the right to request a new trial, did make such a motion for new trial, but then failed to present evidence in support of said motion as is contemplated in Neb. Rev. Stat. § 29-2102(1) (Reissue 2016). Although

Madren is correct in asserting that § 29-2102(1) provides that "[t]he grounds set forth in subdivisions (2), (3), and (6) of section 29-2101 shall be supported by affidavits showing the truth of such grounds, and the grounds may be controverted by affidavits," he does not articulate what, if any, evidence his trial counsel failed to produce to support any ground for mistrial.

[20] In connection with a claim of ineffective assistance, our Supreme Court has stated:

We hold that in the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

*State v. Abdullah*, 289 Neb. 123, 132-33, 853 N.W.2d 858, 866 (2014). For instance, in *Abdullah*, the court held that an argument that counsel's failure to call "'at least two witnesses that [the defendant] informed would be beneficial to his case'" was a conclusory and general allegation lacking in specificity and serves as "little more than a placeholder" resulting in a failure to preserve it for a future postconviction action. 289 Neb. at 126-27, 133, 853 N.W.2d at 863, 867.

Although Madren argues his counsel was deficient in failing to offer evidence at the motion for new trial in support of his motion, he never articulates what evidence his counsel should have submitted which would have made a difference. Similar to the defendant's argument of failing to call "witnesses" in *Abdullah*, Madren's argument that his trial counsel's failure to produce "evidence" in connection with his posttrial motion without naming what, if any, evidence may have supported it meets with the same result. This assignment of error fails.

### (b) Trial Counsel's Failing to Object
### to "Expert" Testimony

Madren next assigns error to his trial counsel's failure to object to certain "incriminating 'expert' testimony to explain deficiencies in [the State's] case." Brief for appellant at 32. Specifically, Madren cites to the testimony of L.O.'s mother where she explains her observations of L.O., including L.O.'s difficulties in processing information for which the mother has now sought medical attention and was waiting on a diagnosis; the general testimony of a mental health coordinator at Project Harmony, Tiffany Lassek, who testified generally about delayed disclosures of assault by children; and testimony of an Omaha police officer, who likewise testified about delayed sexual assault disclosures by children.

In support of his contentions, Madren argues that Neb. Rev. Stat. § 27-702 (Reissue 2016) states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." He then argues that pursuant to *State v. Tolliver*, 268 Neb. 920, 689 N.W.2d 567 (2004), in Nebraska, a trial court's evaluation of expert testimony involves a four-step process, which involves determining whether the expert witness is qualified, whether the expert's reasoning or methodology is scientifically valid and reliable, whether the reasoning or methodology has been properly applied in the case, and whether the opinions are more probative than prejudicial.

After setting forth that criteria, Madren generally argues that with respect to the above-cited persons and testimony:

> Madren's trial counsel did not demand that the State qualify any individual as an expert nor did counsel object regarding the proffering of expert testimony. [Madren] suffered actual prejudice due to counsel's lack of performance because the State, in its closing argument, relied

extensively on opinion evidence to argue that the jury
should convict Madren.

Brief for appellant at 32.

We find that the record is sufficient to review these assign-
ments of error. First, as to L.O.'s mother's testimony, she
simply testified as to her observations of L.O.'s difficulties
in processing information for which the mother was seeking
medical attention. As we discussed above, L.O.'s mother never
offered an opinion as to what was causing her daughter's issues
or a diagnosis of any condition. Accordingly, L.O.'s mother's
testimony was not expert testimony, and Madren's trial coun-
sel was not deficient for failing to object to her testimony on
that basis.

Regarding Lassek, Madren's specific objection relates to
her general testimony governing why victims of sexual assault
sometimes delay reporting the incident to authorities. Her testi-
mony was not specific to L.O. As to Madren's specific assign-
ment of error, the record demonstrates Lassek was qualified
to issue that general opinion, and Madren fails to provide any
specifics on why that general opinion should have been further
challenged and on what basis.

Finally, as to the police officer, Madren's specific objection
likewise relates to her general testimony governing why sexual
assault victims sometimes delay in reporting the incident to
authorities. Her testimony was not specific to L.O. As to
Madren's specific assignment of error, the record demonstrates
the police officer was qualified to issue that specific general
opinion, and Madren again fails to specifically articulate any
basis upon which this general opinion should have been further
challenged. This assignment of error fails.

### (c) Trial Counsel's Eliciting Incriminating
### Evidence Against Client

Madren next challenges his counsel's line of question-
ing involving Lassek's forensic interview of L.O. at Project
Harmony. During that questioning, the following colloquy
ensued between defense counsel and Lassek:

Q. Okay. Now, do you recall [L.O.] at any point during the interview prior to that break mentioning sexual penetration?

A. I don't believe so.

Q. You don't remember or you don't think she did?

A. I don't think she did.

Q. Okay. So you did ask a question afterwards as to whether or not his penis was on the inside or outside of her down below; is that right?

A. I did.

Q. Okay. And at that point, after meeting with law enforcement, specifically asking that question, then she said it was both; is that right?

A. Correct.

Q. Okay. So it wasn't until after meeting with law enforcement that that question was asked, and it was only after that question was asked that anything was actually mentioned about sexual penetration; is that right?

A. Ye[s].

Madren argues that on direct examination by the State, Lassek did not testify that L.O. reported to her that she was sexually assaulted. Madren argues his counsel's own line of questioning on cross-examination opened the door to Lassek's testifying that L.O. told her she had been sexually penetrated. In response, the State argues that "[t]he implication from [Madren's counsel's] questions is that L.O. did not disclose sexual penetration during the interview, and only did so at the prompting of the interviewer," and that the line of questioning represented a trial strategy or tactic which should not be second-guessed by an appellate court. Brief for appellee at 27-28. Although we understand this argument, we note the Nebraska Supreme Court's statement governing a similar issue in *State v. McCulloch*, 274 Neb. 636, 642-43, 742 N.W.2d 727, 732 (2007), wherein it held:

We do not, and cannot, determine on direct appeal whether defense counsel elicited the evidence at issue

pursuant to a reasonable defense strategy because there has been no evidentiary hearing to present evidence regarding defense counsel's strategy or lack thereof. While in hindsight it appears that defense counsel may have helped the State prove an element that the State may have failed to adequately prove, without an evidentiary hearing to explore defense counsel's strategy, we cannot determine based solely on the record on direct appeal that defense counsel's performance was deficient. Such a determination would require consideration of whether defense counsel's actions were reasonable in the context of the trial.

Here, we note L.O. separately testified that she was sexually assaulted such that the testimony from Lassek does not provide the only evidence of the sexual assault. Nevertheless, because the record does not disclose whether eliciting this evidence was a part of defense counsel's strategy, we find the record is not sufficient to reach this claim.

### (d) Trial Counsel's Failing to Object to Hearsay Testimony

Madren's final assignment of error is that his counsel failed to object on hearsay grounds to certain testimony from a nurse practitioner and program manager at Project Harmony. She testified about her interview with L.O. at Project Harmony. Specifically, she testified that L.O. told her she came to Project Harmony because she was raped by "James," a man in his thirties who was living at their home, and that by "rape," she meant James placed his penis in her vagina. Madren argues that this testimony was hearsay and that his trial counsel was ineffective for failing to object to it.

In support of his assignment, Madren argues that his trial counsel failed to put the State to the burden of satisfying Neb. Rev. Stat. § 27-803(3) (Reissue 2016), which excepts from the hearsay rule statements made for the purpose of medical diagnosis or treatment. L.O.'s statements were made to the nurse practitioner in connection with her interview of L.O. and

as part of her function with Project Harmony. Madren does not specifically articulate what, if any, deficiencies there were with this testimony which would fail to qualify it for admission under § 27-803(3); instead, he simply argues his counsel failed to put the evidence to the test.

[21,22] Contrary to Madren's assertions, the Nebraska Supreme Court has stated: "'[S]tatements made by a child victim of sexual abuse to a forensic interviewer in [the chain of medical care] may be admissible under [§ 27-]803(3) even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes.'" *State v. Jedlicka*, 297 Neb. 276, 286, 900 N.W.2d 454, 464 (2017), quoting *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). The Nebraska Supreme Court further held:

> [T]he fundamental inquiry to determine whether statements, made by a declarant who knew law enforcement was listening, had a medical purpose is "'[i]f the challenged statement has some value in diagnosis or treatment, [because] the patient would still have the requisite motive for providing the type of "sincere and reliable" information that is important to that diagnosis and treatment.'"

*Id.*, 297 Neb. at 286-87, 900 N.W.2d at 464.

As to Madren's nondescript argument that his trial counsel was ineffective for failing to object to the nurse practitioner's testimony on hearsay grounds, we find the record is sufficient to address this assignment of error. Specifically, we find the record indicates that the interview was conducted within the chain of medical care for L.O. and that the statements were made with the intent to obtain a medical diagnosis or treatment for her. As such, any objection on hearsay grounds would have been overruled and Madren's counsel was not insufficient in failing to object to it. This assignment of error fails.

## 6. Accumulation of Errors

Madren's next assignment of error is that the accumulation of errors mentioned above were not harmless and that, taken

together, they demonstrate he did not receive a fair trial. Yet, as we have already explained, Madren's assigned errors were lacking in merit and only one claimed error of ineffective assistance of counsel has been preserved. This assignment of error fails.

### 7. Excessive Sentence

Madren contends the court abused its discretion by imposing an excessive sentence because the court failed to sufficiently weigh the sentencing factors.

[23-25] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Madren was convicted of first degree sexual assault, which is punishable by a minimum sentence of 1 year's imprisonment and a maximum sentence of 50 years' imprisonment. See § 28-319; Neb. Rev. Stat. § 28-105 (Reissue 2016). Madren received a sentence of 30 to 38 years' imprisonment, which falls within the statutory sentencing range.

At sentencing, the court noted it had considered the presentence investigation report, in which Madren scored very high in the categories measuring "Procriminal Attitude/Orientation

and Antisocial Pattern." Overall, Madren scored a 26, placing him in the high risk category. After reviewing the record, we conclude the district court did not consider any inappropriate factors for Madren's sentence. Thus, Madren cannot show the court abused its discretion, and this assignment of error fails.

## VI. CONCLUSION

For the foregoing reasons, we affirm Madren's conviction and sentence. We further consider and reject Madren's claims of ineffective assistance of trial counsel with the exception of his claim that his trial counsel was ineffective for opening the door to Lassek's testifying that L.O. told her that Madren sexually penetrated L.O., which we determine the record on direct appeal is insufficient to address.

Affirmed.